Phelps *v.* Robbins.

# SUPREME COURT OF ERRORS.

## COUNTIES OF HARTFORD AND TOLLAND.

### SEPTEMBER TERM, 1873.

### Present,

SEYMOUR, C. J., PARK, CARPENTER, FOSTER, AND PHELPS, Js.

HARRIET A. PHELPS AND ANOTHER, EXECUTORS, *vs.* MARY A. ROBBINS AND OTHERS.

The term "residue," as used in wills, ordinarily means that portion of an estate which is left after the payment of charges, debts, and particular bequests.

The presumption is that a testator uses it in this sense, unless a contrary intention clearly appears.

The fact that a testator gives a portion of the residue of the estate by an early clause of his will, in connection with a particular legacy, and that various particular legacies are given later in the will, is not sufficient evidence that the testator used the word "residue" in any other than the usual sense.

A testator, leaving a large estate, by the first clause in his will gave a legacy to his widow absolutely, and the use for life of one third of "all the residue of the estate." Several particular legacies were given by later clauses of the will, and among them one of $50,000 to each of his two children; and by a final clause he gave all the remainder of his estate to his two children equally, with a provision that if they should die before his widow, leaving no children, the estate remaining should be divided into three equal parts, of which his widow should have one absolutely, and the other two thirds should go to certain relatives named. Held, that the term "residue," as used in the first clause, must be taken to mean the final residue after all the legacies were paid, and not the particular residue after the payment of the single legacy to the wife.

The testator in giving the remainder to his two children provided that "if either of them should die leaving issue, the portion of such child should go to his or her issue in equal shares." Held, in view of sundry other provisions of the will favoring such a construction, that the testator must be taken to have intended a dying without issue in his lifetime, and that consequently the children, having survived and taking under the will, took an absolute estate.

The testator gave his daughter, by the fifth clause of his will, $50,000 absolutely, and by the eighth clause, one half of the residue. The ninth clause

was as follows :—" I hereby direct that the several bequests herein made t o my children be paid at such time or times as my executors shall judge for their best good, and in regard to the portion of my daughter, I direct that the same be settled upon trust for her, for her sole and separate use." Held, that by the term " portion," as here used, was meant the share of the daughter in the residue given by the eighth clause, and that it did not include the legacy given by the fifth clause.

The ninth clause, directing that the daughter's portion should be settled upon trust for her, contained also the following provision : " And I hereby direct that my executors cause such settlement to be made by deed in suitable form." Held that it was the intent that some person or persons other than the executors should be appointed as trustees.

Whether papers referred to in a will and which are not descriptive or explanatory in their character of property given by the will, but contain instructions with regard to the disposition of the property, can be admitted and considered as a part of the will : *Quære.* The court inclined strongly to the opinion that under our statute directing as to the mode of executing and attesting wills, they cannot be admitted.

But whatever may be the general rule on this point, yet very clearly such papers must have been in existence at the time the will was made, and must be referred to by the will in such clear and definite terms as to leave no room for doubt what papers were intended.

The testator devised certain real estate by the following clause: " I give the same to my executors in trust, to be disposed of by them in such manner as I shall direct by written instructions in my handwriting to be left with my will." Held—1. That a paper found with the will, drawn and signed by the testator, giving specific instructions as to the disposition which he wished to have made of the real estate in question, was not to be regarded as a testamentary paper and a part of the will. 2. That it was not operative as a declaration of the trust intended. 3. That in the absence of any legal directions as to the trust intended, the devise to the executors was inoperative and the property fell into the residuum.

Petition by the executors of the will of George D. Phelps, for advice as to the construction of sundry clauses of the will and as to their duties under the same; brought to the Superior Court in Hartford County.

The will was executed in the city of New York, where the testator resided, on the 7th day of February, 1863. The parts of it important to the present case are as follows :

" *Second.* I give to my beloved wife, Harriet Augusta Ayres, the sum of five thousand dollars, to her own sole use, benefit and behoof forever; and I hereby relinquish to my said wife all right and claim which I or my estate may have to any share or portion of the estate of her late father, Simeon Ayres, deceased.

" *Third.* I give and bequeath to my said wife the use and income of one equal third part of all the residue of my estate, both real and personal, so long as she shall live and remain unmarried, and upon her death or marriage during the life of my two children, I give, devise and bequeath the said one-third part of my estate to my said children, equally, and to their heirs and assigns forever. I also give unto my said wife the use of all my furniture, useful and ornamental, books, (except as hereinafter specified,) pictures, maps, musical instruments, and plate and plated ware, for her use and that of my children jointly, so long as my said wife shall live and remain unmarried; and upon her death or marriage, I give all my pictures, (except family portraits,) and all my books and maps, (except as hereinafter specified,) to my son George Dwight Phelps. My family portraits, and all my silver ware, silver plate and china ware (dinner and tea sets), musical instruments and music, and also my cabinet of Egyptian and other curiosities, collected during our recent tour in the East, I give to my daughter, Mary Ayres Phelps; and the remainder of my furniture, of every kind, I give to my said children, equally, share and share alike; *provided however*, and the foregoing bequests to my said wife are upon condition, that she accepts the same in lieu of dower, and all other claim upon my estate, except as hereinafter provided. I also give to my said wife the use of my gold chronometer watch, during her life, and after her death I give the same to my daughter, Mary Ayres, as a memento and family keepsake.

" *Fourth.* I give to my son, George Dwight, my Russia bound Royal Quarto Bible, given to me by the American Bible Society, for services as chairman of the building committee; and to my daughter, Mary Ayres, my morocco bound Quarto Bible, with Records, &c. ;     *     *     *

" *Fifth.* I give and bequeath to each of my children who shall be living at my decease, the sum of fifty thousand dollars, in addition to the property hereinbefore given to them upon the death or marriage of my said wife.

" *Sixth.* [Bequests to his brothers and sisters.]

" *Seventh.* [Bequests of $2,500 each to the American Sunday School Union and the American Tract Society.]

" *Eighth.* After all the foregoing bequests are paid, I give, devise and bequeath all the residue and remainder of my estate, of every kind and description, to my two children, George Dwight and Mary Ayres, equally, share and share alike, and if either of my said children shall die leaving issue, the portion of such child shall go to his or her issue in equal shares.

" *Ninth.* I hereby direct that the several bequests herein made to my children be paid or set apart to them respectively, at such time or times as, having regard to their several circumstances, moral and pecuniary, my executors shall judge for their best good; and in regard to the portion of my daughter, I direct that the same be settled upon trust for her, for her sole and separate use and benefit, free from the control of any husband, and so that the principal be safely invested, and the income thereof, after the payment of all just charges, be applied to her separate use, so long as she shall live; with power, also, to such daughter, notwithstanding her coverture, to dispose of the said principal by will to and among her issue, in such shares as she may think proper, and so that if she leaves no issue surviving her, the share of such daughter shall go and belong to such of her heirs, or next of kin, as shall be of her own blood, in such shares as they would have taken the same (as real or as personal estate, respectively) if my said daughter had died intestate, owning such property in her own right and leaving them only as her heirs or next of kin. And I hereby direct that my executors cause such settlement to be made by deed or instrument in suitable form, and in conformity with the directions in this clause of my will expressed, (or as nearly thereto as the law will permit,) and with such other provisions and powers, not inconsistent herewith, as they may deem necessary to carry my intention in this regard into full effect.

" *Tenth.* In case both my children shall die, leaving no issue surviving them, but leaving my wife surviving them, then I direct that such portion of my estate as shall then

remain not disposed of, according to the previous provisions of this my will, be divided into three equal parts, of which I give one equal third part thereof to my said wife, for her sole use and benefit, to be paid over to her on her separate receipt therefor, whether she be married or single; the remaining two-thirds I give as follows:" * * * *

On the 5th day of December, 1865, the testator executed a codicil to the will, giving his wife ten thousand dollars in lieu of the five thousand dollars given by the second clause of the will, and making some other changes, not important to the present case.

On the 6th day of April, 1869, he executed another codicil, the only part of which important to the present case is the following clause:—

"Second. The following premises, situated in Simsbury, Connecticut, viz., the house and grounds in Hop Meadow, and the furniture in said house, as said house shall be finished and furnished at my death; also the house and grounds now occupied by my brother Hector, in East Weatogue; and also the house and grounds now occupied by his son John, also in East Weatogue, I give to my executors in trust, to be disposed of by them in such manner as I shall direct, by written instructions in my handwriting, to be left with my will."

The testator on the 1st day of July, 1870, made a third codicil, and on the 25th day of April, 1871, a fourth codicil, but no question in the case arises under their provisions.

The testator died on the 31st day of August, 1872.

The petition set forth the will and codicils, and averred that of the four executors appointed by the testator two had declined to act, leaving only the petitioners, Harriet A. Phelps, the widow, and George D. Phelps, the son of the testator, to execute the will, and that they had accepted the trust and had entered upon the discharge of their duties. The petition then proceeded as follows:—

And the petitioners aver that they have proceeded with the settlement of said estate under said will so far as to return an inventory of the property belonging thereto, and to pay all the debts against said estate, together with the funeral

charges, and they have now on hand personal estate amounting to more than the sum of five hundred thousand dollars, ready to be disposed of under the provisions of said will; that the daughter of the testator, Mary Ayres Phelps, has intermarried with and is now the wife of Horace M. Robbins, Jr., of the city of New York, and has three children, the issue of such marriage; that two of the legatees named in the sixth clause of said will, to wit, Noah Amherst Phelps and Charlotte M. Jewett, died before the decease of the testator, and that all the other legatees named in said will and codicils survived the testator and still survive.

And the petitioners further represent that doubts have arisen in regard to the true meaning of many of the provisions in said will, by reason of which the petitioners are unable to proceed in the execution of their trust, and make a final disposition and settlement of said estate, and by reason of said doubts the petitioners do not know, and are not advised, whether the one equal third part of the residue of the estate, the use of which is given to the widow of the deceased in the third clause of said will, is intended to include one-third part of the whole estate, after the debts and expenses are paid and the pecuniary legacy given to said widow is deducted, or whether it is intended to include only such property as shall remain after all the debts and expenses and all the legacies given in said will are paid and satisfied. Nor do the petitioners know, nor are they advised, whether the legacies given to the children of the deceased, to wit, George Dwight Phelps and Mary Ayres Phelps, in the eighth clause of said will, are estates in fee simple or estates in fee tail. Nor do they know, nor are they advised, as to the nature of the estate given to the daughter in the provisions contained in the ninth clause of said will; nor do they know nor are they advised how they can settle the portion of said daughter according to said provisions.

The petitioners further represent that the property described in the second clause of the second codicil to said will, purporting to be conveyed to them in trust, is of the value of forty thousand dollars; and they aver that they have found

three papers in the handwriting of the testator, left with his said will, each of them, among other things, containing directions for the disposition of said property; two of said papers seem to be of the same date, and are nearly identical; the other paper is of a different date, and differs somewhat from the other in its provisions regarding said property.

The persons interested in the use of said trust property, as appears from said three papers, are the widow and children of said testator, and Hector F. Phelps, his wife, Selina Phelps, and his three sons, John, Fayette, and George, all of said Simsbury.

The petitioners are in doubt, and need the advice of this honorable court, whether they take any estate in trust under said provisions, and if so they do not know, nor are they advised, how to discharge the duties of the trust committed to them.

And inasmuch as the personal interests of the petitioners may be antagonistic as between themselves, and also antagonistic to the interests of the other persons named in said will, they humbly pray that the said Mary Ayres Robbins and her husband, Horace M. Robbins, Jr., and the said Hector F. Phelps, Selina Phelps, John Phelps, Fayette Phelps, and George Phelps, may severally be required to appear before this court and interplead with the petitioners, to the end that this court may, upon a full hearing and argument, advise and direct the petitioners as to their duty in the further execution of the trust committed to them, and particularly as to the amount that is to be set apart for the use of the said widow during her widowhood; whether the children of said deceased are to take the bequests or any part of the bequests to them in fee simple, or fee tail, or otherwise; how they are to settle the portion of the daughter according to the provisions of said will; and how they are to dispose of the property situated in said town of Simsbury; and that said court will give the petitioners such other and further advice as will enable them to execute the several trusts committed to them under said will according to law and the provisions of said will.

The respondents Mary A. Robbins and Horace W. Robbins, Jr., her husband, filed an answer, admitting the facts alleged in the petition, and stating their claim with regard to the rights of the said Mary A. Robbins under the will and codicils as follows:—

And as to the points of doubt that have arisen under said will, and the codicils thereto, and are consecutively set forth in said petition, these defendants claim as follows:—

1st. That the one-third of the residue of the estate of the testator, the income of which is given to the widow during her life, or until her re-marriage, by the third clause of said will, includes only one-third of the estate after the payment of the debts and expenses of said estate, and the specific legacies given in and by said will; and that, in any event, the specific legacies of fifty thousand dollars each, given to the son, George D. Phelps, and to the daughter, Mary A. Robbins, one of these defendants, in and by the fifth clause of said will should be paid out of and deducted from the estate of said testator before the one-third of the residue mentioned in said third clause is set apart for the use of the widow.

2d. That the said Mary A. Robbins is entitled to receive the bequest of fifty thousand dollars, given in and by the fifth clause of said will to each of the children of the testator who should survive him, in fee simple to her sole and absolute use; and that said legacy of fifty thousand dollars is distinct from, and does not form a part of, the "portion" of said daughter, Mary Ayres Robbins, referred to in the eighth and ninth clauses of said will, which portion the defendants claim consists of one-third of the residue of said estate after the payment of the debts, expenses and specific legacies.

3d. And as to said portion of Mary A. Robbins, (being the one-third part of the residue of said estate,) that the same should be delivered to some proper trustee, to be appointed in the state of New York, in accordance with the laws of the state of Connecticut, on the application of the said Mary A. Robbins, which trustee shall give security in said state of New York, to invest and keep invested the properties composing such one-third part of the residue of said estate, in

VOL. XL.—33

such securities as are allowed by the thirteenth clause of said will, and to pay over the income of the same as often as received, to the said Mary A. Robbins, less legal charges; and in case of the decease of the said Mary A. Robbins, to pay over the principal of said trust fund to such of her issue, and in such proportions, as she shall by last will and testament appoint; and in case she depart this life leaving no issue her surviving, that such trustee hold said fund and carry out the provisions of the will as to said portion in accordance with the further order of this honorable court.

4th. That the said Mary A. Robbins has a vested remainder in fee simple in one-half of the one-third of the residue of said estate, the income of which is given in and by the third clause of said will to the widow of said testator during her life, or until her re-marriage, and the principal of which, upon her decease or re-marriage during the lifetime of his two children, is given to said children equally, and to their heirs and assigns forever; and that if the widow of the testator depart this life or re-marry during the lifetime of the said Mary A. Robbins, the latter will be entitled to said one-half of said provision for said widow in fee simple to her sole and absolute use.

5th. That the paper writings averred by the petitioners to have been found by them with the will of said testator, should not be considered a part of said will, and should be considered void and of no effect in respect thereto, inasmuch as it does not appear that they were executed with the formalities required by the laws of the state of Connecticut for the execution of wills, and inasmuch as one of said paper writings bears date after the date of the codicil referring to the execution of paper writings to be left with the will, and the other two of said paper writings, though dated on the same day as said codicil, appear to have been written after the execution of said codicil, and inasmuch as there is no proof but that all of said paper writings were written long after the execution of said codicil, and inasmuch as said paper writings are not identified as the one referred to in said codicil, and inasmuch as certain of the provisions of said paper writings are inconsistent and contradictory.

And the answer prayed for a decree of the court in accordance with the foregoing claims.

The court found the allegations of fact in the petition and answer to be true, and that the following three papers were found by the executors with the will, all in the handwriting of the testator, and that they were sufficiently identified as the papers referred to in the second clause of the second codicil. The first two papers bore the same date, April 6th, 1869. There was no evidence except that furnished by the papers themselves to show when they were executed. It was admitted that neither of them was ever seen by any of the witnesses to the will or codicil. One of the papers was as follows:—

"NEW YORK, April 6th, 1869.

"To my Executors, HARRIET A. PHELPS, GEO. D., JR., O. E. WOOD and W. EDWARDS :

" In the codicil to my will, made on my 65th birth-day, (this 6th day of April, 1869,) I have bequeathed to you in trust the three houses and grounds in Simsbury, Conn., to be conveyed or set over according to my private instructions of the latest date, which will be found enclosed with the duplicate of this my last will in my tin box, in safe box in the N. Y. Safe Deposit Company, Broadway, corner of Liberty street, where will also be found a schedule of all my assets, with estimated value of same, as prepared and amended from time to time.

" Until advised under later dates, it is my desire that the two places in East Weatogue shall, as at present, be used by and for the benefit of the family of my brother, Hector Fayette, or such of them as continue to maintain a good moral character ; having regard also to the more urgent necessities of each ; and in all these respects I make my executors the sole judges and umpires. Should the project of purchasing a place for my brother Noah A., and his son Amherst, in connection with my brother Jeffery, be consummated, then I wish my executors also to confirm to my said brother Noah, or his son Amherst, the *free* use and possession of such place so purchased by my brother Jeffery and myself, so long as the said Amherst or his wife shall continue of good moral char-

acter and habits, and continue dependent and in need of assistance.

" And in regard to the house, ground and furniture in Hop Meadow, town of Simsbury, Conn., I design it for a homestead for my wife and family for a summer residence, and I desire that my wife shall have control and first possession, and then my daughter, Mary Ayres Robbins; and if not needed or desired by either or both of the first named, then my son, Geo. D., Jr., to have the use. But it is my desire and hope that the three may agree to occupy it *jointly*, and at their *joint* and *equal* expense, for a summer residence. And it is further my desire that the survivors or survivor of the above named three shall possess the use of the same undisturbed or questioned, until the decease of the last of the three, and then that it shall remain in possession of the children and legal heirs of my son, George Dwight. Jr. to be kept up as a family residence.

" In regard to the foregoing and other matters occurring from time to time, my executors will find more full and later instructions with the duplicate copy of my will aforenamed, and also in my *Journal*, where a full account of my money transactions and affairs are intended to be kept.

" With respect and great confidence in your discharge of these trusts and instructions,

Yours, &c.,

Geo. D. Phelps."

The other paper of the same date was addressed in the same manner to his executors, and gave substantially the same directions with regard to the two places in East Weatogue, and the homestead at Hop Meadow, in Simsbury. After disposing of these matters it proceeded as follows:—

" In regard to my assets, a schedule of which will be found herewith, it is my advice that the same, so far as practicable, be divided and set off without *sale*, except in regard to fractions and doubtful assets or securities.

" It has been my purpose to make *safe* investments, and, as far as convenient, in sums that will divide by three, so that my son's portion may be set off and transferred to him in kind;

and the interest or income from the other two portions may be paid to my wife and daughter equally, share and share alike, as the same may be collected.

" Fractional parts and the smaller items of the said assets may be disposed of to satisfy the specific legacies, or may be sold and reinvested, according to the judgment of my executors. . Among the items which it may be wiser to sell and re-invest are the express stocks, Illinois and St. Louis Bridge scrip stock, and Sioux City Contracting Company, but in regard to which M. K. Jesup will be a good adviser.

"The accompanying inventory will give general information in regard to values, and my *Journal* will give information of changes of investments from day to day, and all other needed information.

" Should the place in Hop Meadow not be completed at my decease, or if for any other cause my wife and son should prefer to dispose of the same, my executors are hereby empowered to do so at any time so advised, and to place the avails in the general funds of the estate and to be disposed of as indicated in my will in regard to the general estate.

" My assets and evidences of same are now in the Safe Deposit Company, Box No. 236, and in tin box in same, the keys of which are on my person, and the duplicates of which are in tin box of private papers, now in iron safe at my resi-dence.

" Hoping in all these matters to give to my executors as little trouble as may be, I remain, &c.,

GEO. D. PHELPS."

The third paper was as follows :—

" 6 EAST 17TH STREET, N. Y., March 2d, 1870. Having with much care invested most of my means in railroad and other securities, *believed to be safe*, and in sums or amounts which may mostly be divided into three parts, my executors may retain the said investments as they now are or shall be at my decease, notwithstanding that some of them may not be strictly within the Eastern or Middle States, as specified or indicated in my will.  GEO. D. PHELPS.

" ADDENDA.—I have now a box No. 112, in the safe vaults

of the Mercantile Loan and Deposit Company, Equitable·
Building, 124 Broadway, in which some of my securities will
be found.   See my *Journal* for particulars.   April 27th,
1871.                                          GEO. D. PHELPS."

The court further found that the estate of the testator was
all personal property, except a dwelling house in the city of
New York, purchased in the spring of 1872, of the value of
$30,000, and the Weatogue and Hop Meadow property, of the
value of $30,000, the latter being the property referred to in
the second section of the second codicil.   The·court also
found that the daughter, Mary A. Robbins, had no issue at.
the time of the execution of the original will: and that the
son, George D. Phelps, had never had issue.

Upon these facts the Superior Court reserved the case,
including the question with regard to the admissibility and
effect of the collateral papers described, for the advice of this
court.

*Waldo*, for the petitioners, in their capacity of executors,
cited, as to the meaning of the term "residue," Webster's
Dict., *Residue*; Bouvier's Law Dict., *Residue* ; 2 Bla. Com.,
514 ; 1 Swift Dig., 457.   As to whether the papers referred to
by the second codicil were testamentary papers and admissible
as a part of the will, 1 Redfield on Wills, 263 ; *Read* v. *Phillips*,
3 Phillim., 122 ; *Metham* v. *Duke of Devon*, 1 P. Wms., 529 ;
*Tonnele* v. *Hall*, 4 Comst., 146.   As to whether the papers were
operative, if not as a part of the will, yet as a declaration of the
trust intended, *Smith* v. *Attersoll*, 1 Russ., 266, 273.   And as
to a devise to a trustee to receive and pay over rents and
profits constituting a legal estate in the trustee, *Crook* v. *Brook-
ing*, 2 Vern., 50, 106 ; *Earl of Inchiquin* v. *French*, 1 Cox Ch.;
1 ; *Shelley* v. *Edlin*, 4 Adol. & El., 582 ; *Booth* v. *Field*, 2
Barn. & Adol., 564.

*Robinson*, for Harriet A. Phelps, as devisee and legatee,
cited, as to the entire gift to the daughter being covered by
the trust created by the ninth section, and as to the meaning
of the word "portion" as there used, Webster's Dict., *Por-*

*tion*; Bouvier's Law Dict., "Portion;" and as to the collateral papers being admissible, and to be regarded as in existence when the codicil referring to them was made by reason of the later republication of the will and codicil, Wms. on Exrs., part 1, book 2, § 2; 1 Redfield on Wills, 263; *In goods of Hunt*, 2 Rob. Eccl. R., 622; *In goods of Mathias*, 3 Swab. & Trist., 100; *In goods of Stewart*, id., 192; *In goods of Truro*, Law Reps. 1 Prob. & Divorce Cas., 201.

*Hubbard*, for George D. Phelps, as devisee and legatee, cited, as to the admissibility of the collateral papers as testamentary papers, by reason of the republication of the will and codicil, *Habergham* v. *Vincent*, 2 Ves. Jr., 204; *Dickinson* v. *Stidolph*, 11 Com. Bench. N. S., 358; *In goods of Lancaster*, 29 Law Jour. Prob., 155; *In goods of Hunt*, 2 Rob. Eccl. R., 622; *In goods of Stewart*, 3 Swab. & Trist., 192; *In goods of Truro*, Law Reps. 1 Prob. & Divorce Cas., 201; 1 Wms. on Exrs., 85, 186, 189; 1 Redfield on Wills, 263; *Tonnele* v. *Hall*, 4 Comst., 146; *Miles* v. *Boyden*, 3 Pick., 216; *Haven* v. *Foster*, 14 id., 543; *Beall* v. *Cunningham*, 3 B. Monr., 398. As to the estate taken by the son of the testator being a fee absolute, and the provision as to his dying without issue being intended to prevent a lapse by his death before the testator, *Gibson* v. *Walker*, 20 N. York, 476. As to the language being sufficient to create a fee tail in real estate, 2 Jarman on Wills, 233; 4 Greenl. Cruise, 240; *Richards* v. *Bergavenny*, 2 Vern., 324; *University of Oxford* v. *Clifton*, 1 Eden, 473; but that the bulk of the estate being personalty the same language would create an absolute fee therein, 2 Jarman on Wills, 490; *Donn* v. *Penny*, 19 Ves., 545; *Lyon* v. *Mitchell*, 1 Madd., 467; *Albee* v. *Carpenter*, 12 Cush., 387; *Hudson* v. *Wadsworth*, 8 Conn., 361. That the real estate being directed to be converted into personal, would in equity be treated as personal property, 1 Jarman on Wills, 524; 1 Story Eq. Jur., § 790; while limitations over in case of personal estate are disfavored, *Brewster* v. *McCall's devisees*, 15 Conn., 291.

*W. M. Evarts* of New York, with whom was *E. F. Hyde* of New York, for Mary A. Robbins, legatee, cited, as to the meaning of the word "residue" in the third section of the will, Burrill's Law Dict. and Bouvier's Law Dict., *in verbum;* and as to the collateral papers not being admissible as testamentary papers because not sufficiently described in the will, *In goods of Watkins*, Law Reps. 1 Prob. & Divorce Cas., 19; because not in existence when the codicil referring to them was executed, *In goods of Brewis*, 28 Jurist, 593; *In goods of Mathias*, 3 Swab. & Trist., 100; *In goods of Dallow*, Law Reps. 1 Prob. & Divorce Cas., 189; *Allen* v. *Maddock*, 11 Moore P. C. Reps., 427; and as to the confirmation of the will and codicil by a later codicil not being sufficient to remove the difficulty, *In goods of Lancaster*, 29 Law Jour. Prob., 155; *In goods of Sunderland*, Law Reps., 1 Prob. & Divorce Cas., 198.

CARPENTER, J.   The first question presented for the advice of this court is, what constitutes the residuum mentioned in the third clause of the will? Is it the whole of the estate after deducting the legacy mentioned in the preceding clause, or is it the balance after paying all the legacies, debts and charges?

Bouvier defines residue to mean "that which remains of something after taking away a part of it; the residue of an estate is what has not been particularly devised by will." As used in wills its ordinary meaning is, that portion of the estate which is left after the payment of charges, debts and particular legacies. The presumption is that a testator uses it in this sense, unless a contrary intention clearly appears. The mere circumstance that, in the arrangement of a will, the word residue is used, and the greater part of the particular legacies and bequests are subsequently given, will not of itself be sufficient evidence of such an intention, especially if such an arrangement can be otherwise accounted for. In the present case it is quite apparent that the testator intended to provide for his wife in the first instance. Accordingly all the bequests to her are found grouped together in the second and

third clauses, except a contingent bequest, which is found in the tenth clause. The pecuniary legacy to her absolutely in the second clause, is immediately followed in the third with a gift of the income for life of one-third of the residue of his estate, and that is followed with a life estate in the furniture, pictures, books, &c. The place in the will therefore in which this bequest is found is not a sure guide to the testator's intention. Much must necessarily depend upon other circumstances—the nature and amount of property, the relation which the testator sustains to the objects of his bounty, and the disposition of his property generally. These and the language of the will afford safer indications of the testator's mind.

A careful consideration of the terms of this will, viewed in the light of the circumstances surrounding the testator and those to whom he left his property, fails to satisfy us that he used the word in any other than its ordinary meaning. He possessed a large property. He left a widow and two children, a son and daughter, and he doubtless intended that his widow should be supported in her accustomed style.

The testator manifestly intended to divide the bulk of his property into three equal parts. Before doing so, however, he gives to each of the three principal legatees a pecuniary legacy, absolutely. The difference in the amount of the sums so given is unimportant in this connection. These and the other particular legacies are comparatively small in amount, so that most of his property is disposed of as residue. The widow's share in the residue is given in these words; " I give and bequeath to my said wife the use and income of *one equal third part* of all the residue of my estate, &c." This indicates but one residuum, and his obvious intention was to divide that into *three equal parts*, one of which is given to the wife, during life or widowhood, and the other two are given by the eighth section to the two children. In this way effect is given to all the words used by the testator, and the equality contemplated by him is preserved. On the other hand, if the claim that there are two *residua*, differently constituted, is sustained, the equality will be destroyed. And

more than this; such a construction not only fails to give effect to the word " equal," but is at variance with the sense intended to be conveyed by the use of that word.

Again, the alleged special residue embraces not only the particular legacies and bequests given in the subsequent sections to other parties, but also all the bequests, except that contained in the second section, to the widow herself. So that property, the use of which is wholly given to her during life, and estimated by the learned counsel for the executors at more than $30,000, is returned, so to speak, to the residue, and made to increase her share in that residue; thus, in respect to that property, practically giving her four-thirds instead of three. In other words, the testator, professing to give her an " equal third," is made to give her one-third of the aggregate, and then to give her a considerable sum in addition from the remaining two-thirds. This, to say the least, is an unusual constitution of a residuum.

We think it hardly admits of a doubt that the testator intended that the furniture, pictures, books, &c., the use of which is given to the wife in the third section, should be taken from his estate, as well as the pecuniary legacy to her in the second section. If so we see no good reason why the same intention should not apply to the gifts in the fourth section, as they are of the same general character. Now if a part of the property subsequently disposed of ought to be taken out before reaching the residuum, why not the whole? No reason for a distinction exists, either in the language of the will, or the order of the several bequests. We must either stop with the second section and construct a residuum there, or wait until the particular legacies and bequests are paid. We think the latter is the better construction.

We therefore advise the Superior Court that the term " residue," in the third clause, includes only such property as shall remain after satisfying all the particular legacies and bequests.

The next question is, whether the legacies given in the eighth section to the children, are estates in fee simple, or life estates merely.

After giving the remainder to his two children, to be divi-

ded equally, the testator adds; "and if either of my said children shall die leaving issue, the portion of such child shall go to his or her issue in equal shares." Language like this devising real estate generally, will doubtless create an estate tail; and when used with reference to personal property, may vest in the issue an interest as an executory devise; unless there is something in the will showing a contrary intention. A careful consideration of all the provisions of this will has led us to the conclusion that it was not the intention of the testator to create an estate tail, nor to vest a life estate merely in the children.

A large portion of this estate is personal property; and the real estate affected by this clause, the testator in the tenth clause directs to be sold and converted into personalty. We do not deem it necessary to consider whether such a bequest of personal property may not create an absolute estate, as we think it an inference deducible from the whole will, that it was in the mind of the testator to provide for the contingency of the death of his children, or one of them, during his lifetime. That he contemplated the possibility of such an event is obvious, for the bequest in the fifth clause vests only in the child or children *living at his decease.* If the children had died during his life time, with or without issue, this bequest would have failed. To guard against a lapse, the provision now under consideration was inserted in the eighth clause. This interpretation makes that clause consistent with itself. The language, "all the residue and remainder of my estate, *of every kind and description,*" was manifestly intended to prevent any portion of his estate from becoming intestate. But if it is held that the children take a life estate only, then, in the event of their dying without issue, a large portion of the estate becomes intestate, unless the widow survives them, in which case it is disposed of by the tenth clause.

A different construction makes this clause inconsistent with the ninth, so far as the daughter's share is concerned. The eighth clause vests the estate in the issue of the daughter equally; the ninth gives the daughter power to dispose of

it by will to and among her issue in *such shares as she may think proper.* These two provisions harmonize, if we consider the first as taking effect only in case the daughter had died before the testator, and the second as taking effect in case she survived him and takes under the will.

If the testator had intended to give the son a life estate only in his share of the residuum, or to have qualified his interest therein, why did he not say so in clear and unmistakable language? In creating a life estate in the widow, he does so in language which leaves no doubt as to his meaning. In engrafting limitations upon the daughter's share, he was careful to do so expressly, and not to leave it to implication. There is no indication in the will that he intended the son's share should be a qualified estate except in the concluding sentence of the eighth clause. If that qualifies it in the manner claimed, then the son is less favored than the daughter, for he is denied even the privilege of directing in what proportion his issue shall take.

It must be remembered also that at the time this will was written, February 7th, 1863, neither of the testator's children were married. It is not probable that he would materially abridge or limit the enjoyment of his estate by his children for the benefit of his unborn grandchildren.

We concede that the view we take of this question creates a difficulty in supplying anything for the tenth clause of the will to operate upon. That difficulty however may be obviated, perhaps, by inserting in the first line the words, "in my lifetime." Or, if that is inadmissible, that section may apply to the principal, the income of which is given to the widow during life or widowhood in the third section.

On the whole, while we admit that this question is not entirely free from doubt, we think the construction we have adopted involves less difficulty than any other, and gives effect to the probable intention of the testator.

The third question is, what does the testator mean by the word "portion," as used in the ninth clause, in which he says, "And in regard to the *portion* of my daughter, I direct that the same be settled upon trust for her, &c., ? Does he mean

the bequest in the eighth clause only, or does he mean that all the bequests to her should be placed in the hands of a trustee ?

All must agree that the word " portion" used in the eighth clause refers simply to her share in the residuum. Perhaps it is a fair inference that, in using it so soon afterwards, and so nearly in connection with the eighth clause, he intended to use it in the same sense. An argument against this may be drawn from the fact that, in the intervening sentence, the first sentence in the ninth clause, he speaks of the " several bequests herein made, &c.," evidently intending all the bequests to the children. The answer to this is, that if he had intended to make all the legacies subject to a trust, he would have continued the use of the word " bequests," in providing for the trust, and would not have used the word " portion " in a different sense from that in which he had so recently used it.

If all that the daughter was to receive from his estate was intended, it must of course include the furniture, portraits, silver and china ware, plate, &c., given by the third section ; and also the Bible given in the fourth section. The nature of this property forbids the idea of a trust, which is somewhat inconsistent with a beneficial enjoyment of it ; at least so much so as to make it improbable that the testator would desire to subject it to a trust. Besides, the property placed in trust by the ninth section is spoken of as property producing an income ; and this kind of property ordinarily produces no income. He could not therefore have intended this as a part of the portion placed in trust.

For similar reasons he could not have intended to include the daughter's interest in the third of the residuum, the use of which was bequeathed to the widow; for the income from that during the widow's life was to go to her and not to the daughter. He manifestly contemplated the trust property as yielding a present revenue for the benefit of the daughter, and the widow as executrix was to assist in settling this trust. It will hardly be contended that she was to place in trust for the daughter a part of her own share in her husband's estate

during her life. We think therefore that it is reasonably certain that this legacy is not a part of the " portion."

It only remains for us to consider the bequest of $50,000. If this stood alone there would be more doubt about it. But it is a contingent bequest, and is expressly associated with the property given in the third section, upon the death or marriage of the wife, and is an addition thereto. As that is given in terms denoting an absolute estate, to her " heirs and assigns forever," there is some room for the inference that this bequest also was intended to be without restriction. But however this may be, all the property given in the third and fourth sections being excluded from the operation of the trust, as we have seen, we think that this legacy should also be excluded, for the reason that the trust must either be limited to the bequest in the eighth section, or embrace all the bequests. There seems to be no room for supposing that the testator had in view one of the prior bequests and not the others.

For some reason the testator saw fit primarily to give to his wife the sum of $10,000, and to each of his children, if living, $50,000. These legacies are given in terms which indicate the gift of the whole interest without qualification or restriction. Having separated this sum from the daughter's share in the residue, we look for a reason. He evidently supposed that she would have a family, and consequently would require the comforts and conveniences of a home. The sum here given is not an unreasonable sum for that purpose. The supposition is a natural one, that, in the choice of a home, he would make her entirely independent of a trust.

Another reason perhaps, equally as satisfactory, may be found in the natural and probable desire of a father to give to his only daughter, and she one of two children only, a reasonable sum in fee simple, to her sole and absolute use. If the language used by the testator will admit of a construction which will produce this result, and we think it will, it ought to prevail in preference to one which will trammel every dollar of her property with a trust.

While the language of the will is inartificial and somewhat confused, yet we think it is tolerably clear that the testator's intention was that the daughter's share in the residue only should be subject to the trust.

The daughter in her answer asks that some one in the state of New York may be appointed trustee, but that is not insisted on. The question then arises, how is the provision in the will relating to a trust to be carried out? It seems to us quite clear that if the testator had intended that the executors should be trustees, the language raising the trust would be quite different from what it is. "I direct that the same be settled upon trust for her, &c." "And I hereby direct that my executors cause such settlement to be made by deed or instrument in suitable form, &c." This language clearly implies that some person or persons other than the executors should be trustees.

We advise therefore that some suitable person or persons in this state be selected to hold the trust property.

The fourth and last question is, whether the papers found with the will, and supposed to be referred to in the second clause of the second codicil, are to be regarded as testamentary papers.

It will be observed that these papers are not descriptive papers merely. When the paper referred to is a map, as in *Tonnele* v. *Hall*, 4 Comst., 146, or a deed, or other similar paper, and referred to for the mere purpose of describing the property intended to be disposed of by the will, there may be no practical difficulty in admitting it to the extent and for the purpose intended. But the papers referred to in the present case are not for the purpose of describing the property, but for the purpose of showing what disposition the testator intended to make of it. Whether under any circumstances a paper *disposing of property*, and which is not actually embraced in the will itself, can, under our statute, be regarded as a part of the will, is a question of great practical importance. The statute provides that "all wills shall be in writing, subscribed by the testator, and attested by three witnesses, all of them subscribing in his presence, and no will or codicil

*shall be valid to pass any estate. real or personal, unless it shall be so executed."*

We are not aware that this question has ever arisen before in this state. No lawyer, to our knowledge, in preparing a will has been bold enough to risk the experiment. On the contrary, the almost universal sense of the profession has been, that a will, in all its parts, must be subscribed and attested in the manner required by statute. The very fact that no case can be found raising the question, in a practice of more than a hundred and fifty years under the statute, and that the cases in our sister states are almost as rare as in our own, is certain'y a strong argument against the propriety of admitting any unattested paper to probate. Even in this case the papers in question have never been admitted to probate. The court of probate has never passed upon the question, and it does not appear that any party interested ever contended that they were or should be considered and treated as a part of the will, until the cause came into the Superior Court, and that court for the first time is asked to give them validity and effect. But passing by this irregularity, it must be conceded, we think, that the course contended for, if sanctioned by this court, will be regarded as a serious innovation. Its tendency will be to render uncertain and confused the testamentary disposition of property, and open a wide field to litigation, to say nothing of the temptation to fraud and imposition. And when all this is done what good results from it? We are not aware of any evils attending the existing practice that the proposed innovation will remedy, nor do we believe that any benefit or advantage whatever will be the result. If so it is manifestly unwise to introduce a change which, so far as we can see, is fraught only with evil. But nevertheless, as this question has not been argued, we do not wish to be understood as deciding the point. We prefer to leave it undetermined, and to rest our decision entirely upon grounds so ably discussed in the argument.

The rule established in England admitting such papers, we understand to be this: First, the paper must be in existence at the time of the execution of the will; and, secondly, the

description must not be so vague as to be incapable of being applied to any instrument in particular, but must describe the instrument intended in clear and definite terms. *Allen* v. *Maddock*, 11 Moore's Privy Council R., 427.

Neither of these conditions existed at the time the second codicil was executed. None of the papers were then in existence, and but for the execution of the subsequent codicils, it is not contended that they could be received.

Nor are the papers sufficiently described. The property is given to the executors " to be disposed of by them in such manner as I shall direct, by written instructions in my handwriting, to be left with my will." This description is " so vague as to be incapable of being applied to any instrument in particular." It is true all these papers were left with the will, were in the handwriting of the testator, and contained instructions relating to the disposition of this property. But the vice is that no particular paper is referred to. Any number of papers, written at any time before his death, however inconsistent with each other, or contradictory even, may answer perfectly the description given. Where there are several papers, as in this case, each answering the description, it is impossible for the court to lay its hand on any one of them and say this is the paper referred to, this contains the instructions by which the testator intended his executors should be governed. No case, we think, can be found, in which papers, so loosely and indefinitely described as these, have been admitted to probate.

This difficulty, whatever may be said of the other, is not removed by the execution of the subsequent codicils.

We therefore advise the Superior Court that the documents found with the will form no part of the will, and cannot be regarded as testamentary papers.

The same reasons apply, with nearly equal force, against allowing these papers to operate as a declaration of the trust upon which the estate in question was conveyed to the executors. Allowing them thus to operate is in effect making them a part of the will.

As it was clearly not the intention of the testator to give

-the property to the executors, that section of the codicil becomes inoperative, and the property remains as it was, a part of the residuum.

The Superior Court is advised to instruct. the petitioners, upon the various questions submitted for its advico, in accordance with the foregoing views.

In this opinion the other judges concurred.