EDWARD F. SEARLES & others, trustees, *vs.* IRENE E.
FIELES & others.

Essex.    December 10, 1907. — February 26, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Devise and Legacy.    Trust.    Words,* "Necessary provisions."

A testator's family for several years before his death had consisted of himself, his
wife, who was deaf and infirm, a first cousin named Mary, a second cousin Irene
and Irene's daughter, all being supported and maintained by him without dis-
crimination.   Mary was interested with him in a retail dry goods business, and
both she and Irene worked in his store and also devoted themselves, without com-
pensation excepting their living, to the care of the household and of the testator's
wife.   By his will, the testator placed practically all of his property in trust and,
among other things, gave directions to his trustee " that my homestead with its
appurtenances and furniture and necessary provisions be held for the use of my
wife and other members of my family, namely," Mary, Irene and Irene's daugh-
ter, " so long as any one of them shall be living and shall desire to occupy the
same."   The testator's wife and Mary died after the testator.   On a bill in equity
brought by the trustee for instructions, it was *held,* that it was the duty of the
trustee to keep the homestead and its appurtenances in repair and to maintain
the furniture by repair and renewal in as good condition, for the use of the two
remaining members of the family, as it was in at the time of the testator's death,
and to furnish to them necessary provisions to supply food but not to pay their
individual expenses nor the other expenses of housekeeping or of maintaining
a home.

BILL IN EQUITY, filed in the Supreme Judicial Court for the
county of Essex July 5, 1907, by trustees under the will of
Artemas W. Stearns, for instructions.

There was a hearing upon the bill, answers and an agreed
statement of facts before *Hammond,* J., who reserved the case
for determination by the full court.

From the agreed statement the following facts appeared as
to the relations of the members of the family of the testator to
one another, mentioned in the third paragraph of the opinion.
The testator at the time of his death was eighty years of age.
He left a widow who was several years older than he and who
had, for many years, been deaf and infirm, requiring constant
care, attendance and companionship.   No children were ever
born of this marriage.   Mary W. Truell, who was a first cousin
of the testator, lived in his family over forty years, and Irene E.

Fieles, who was a second cousin of the testator, had lived in the family continuously for twenty-four years, except for a year or so, and her daughter, Mary I., was born there. The testator engaged in the retail dry goods business in Lawrence for forty-two years, and, at the time of his death, Mary W. Truell with two others beside the testator were a partnership that was carrying on the business, the testator owning a seventy-six per cent interest and Mary W. Truell's interest being worth $2,300. Mary W. Truell worked in the store from the time she came to Lawrence until she was admitted to the partnership, and Irene E. Fieles worked in the store for many years. Mary W. Truell, Irene E. Fieles and her daughter, the testator and his wife all lived together as one family, the entire expenses of the household, including the personal expenses of each member thereof, being borne by the testator. He maintained the family in a manner befitting a prudent man of his means and estate. The various members of the family were maintained as a whole without discrimination or difference. At the time of the death of the testator, Mary W. Truell was possessed of nothing except her interest in the partnership, and Irene E. Fieles was possessed of no money or estate whatever. For many years Mary W. Truell and Irene E. Fieles had devoted themselves to the care of the homestead and household and of the testator's wife, and all this was done by them without compensation, except for their living as aforesaid. Mary W. Truell died after the testator and before this bill was filed.

The will, after directing the payment of debts and funeral expenses and expenses of administration, and making provision for a monument, placed the entire residue of the testator's property in trust, the first direction to the trustees being that mentioned in the opinion.

Other facts are stated in the opinion.

The case was submitted on briefs.

*C. H. Cox,* for the respondents.

*D. Malone,* Attorney General, *& F. T. Field,* Assistant Attorney General, for the Commonwealth.

KNOWLTON, C. J. This is a bill for instructions, and the only question presented by it is what is the meaning of the provision for the beneficiaries in a clause of the will of Artemas

W. Stearns late of Lawrence, deceased, which is as follows:
" First, I direct that my homestead with its appurtenances and
furniture and necessary provisions be held for the use of my
wife and other members of my family, namely, Mary W. Truell,
Irene E. Fieles and Mary I. Fieles, so long as any one of them
shall be living and shall desire to occupy the same." The con-
nection in which the word "provisions" is used makes it plain
that the testator did not think of it as the plural of provision, in
its meaning of an act of providing, so that it should be con-
strued as referring to acts making provision for the wants of the
family. It is used in connection with other words which all
signify kinds of property, and it seems plain that this was in-
tended as a general designation of a certain kind of property.
It is said in *Commonwealth* v. *Reid*, 175 Mass. 325, 329, that
" the word 'provisions' means food, victuals, fare, provender."
See *Commonwealth* v. *Caldwell*, 190 Mass. 355. The difficult
question in the case is whether the clause means that the mem-
bers of the family are to have the homestead and the furniture
and the provisions on hand at the time of the testator's death,
to use as they were until worn out or consumed, except as they
should be kept in repair at their own expense, or whether the
direction to the trustees that these several articles be held for
the use of the testator's wife and other members of his family
was equivalent to a direction that they should be maintained by
the trustees for this use. These are essentials and appointments
which constitute the material features of a home. The thought
of continuing a home for the testator's family seems to have
suggested the words.

The fact that there is no express provision for an expendi-
ture of money for this purpose favors the contention of the
Attorney General. On the other hand, there is much to sup-
port the opposite contention. The words "necessary pro-
visions" indicate that the provisions referred to were not such
as might happen to be on hand at the time of the testator's
death, but such as might be needed for the support of the
family afterward. If the word "held" be taken alone and
construed narrowly, it seems to refer only to property which
the testator left at his decease. But the words "held for the
use of" in connection with the term "necessary provisions"

accompanying the words "homestead and furniture," which naturally suggest a large degree of permanence, carry with them the idea of continued action and maintenance by the trustees.

When we consider the close relations of the members of this family to one another, and the long and faithful service of the others to the testator's invalid wife, and their dependence upon the testator's bounty for their support after his death, we discover strong indications of an intention on his part to have the house and furniture maintained for their benefit, with the necessary provisions. The fact that the income left to them was not enough to maintain them in the manner in which they had lived, and the further fact, under conditions existing since the death of Mary W. Truell and the testator's wife, that Mrs. Fieles's share of the income would not enable her to maintain the home and support herself comfortably if all the expenses were borne by her, emphasize the suggestion that these articles of property, to be "held for the use of" the family, are to be maintained for their use. In this respect the case has some analogies to *Denfield, petitioner,* 156 Mass. 265.

It is the duty of the trustees to keep the homestead and its appurtenances in repair, and to maintain the furniture by repair or renewal, so as to keep it in as good condition as it was in at the time of the testator's death, and to furnish necessary provisions to supply food for the use of the two remaining members of the family. They are not called upon to do more than to maintain and supply the articles of property mentioned in this clause of the will. The individual expenses of the two surviving members of the family are not to be paid by the estate, nor are the other expenses of housekeeping and of maintaining a home to be so paid.

We infer that the income will be more than enough to make these necessary payments, and that there is no occasion to consider whether such payments could be made from the principal fund.

*So ordered.*