Louis E. Denfield & another, petitioners.

Worcester.    March 24, 1892. — May 7, 1892.

Present: Field, C. J., Allen, Holmes, Knowlton, Morton, Lathrop, & Barker, JJ.

*Devise — "Home" — Residuary Clause — Condition — Absolute Estate.*

In a petition by executors for instructions as to the construction of a will, the testator's intentions must be gathered from the will itself, viewed in the light of existing circumstances; and declarations as to his wishes and intentions are inadmissible.

Where a bequest was, "To my sister E. a home at my house as long as she lives, and I direct that my executors attend to this," it was *held*, from the character of the testator's family, the extent of his property, the nature of his dwelling-house, the physical condition, advanced age, and moderate income of the legatee,

and her relations to the testator, the meagre provision made for her in the residuary clause of the will, the fact that she had received from the testator in her lifetime when living in his home her support after becoming unable to work, and the statement in the bequest, " and I direct that my executors attend to this,' that the testator intended that the executors should not only allow her to live in the house, but that they should furnish to her there her necessary food and fuel, though not her clothing; and that, the daughter's constant attendance upon the mother being contemplated, the same, construction was to be given to another article of the will devising to the daughter a home at the house so long as her mother should live.

By the residuary clause of his will, a testator provided that " One half of my remaining property I give in trust to my executors, to be given to my daughter C. as soon as they shall dispose of the same. . . . The above provision for C., my daughter, is made on condition she remains single. This provision has reference to what is given my daughter by clause 3 as well." Clause 3 was as follows : " To my daughter C., the house on High Street in said Westborough, now owned by me, and in which she lives." *Held*, that C. was entitled to her share of the residue as soon as the executors should dispose of the same.

A pecuniary legacy to the testator's adopted son, " in trust to my executors," goes to the legatee absolutely free from any trust.

. ALLEN, J. The first question is as to the meaning of the devise in article 4, which is as follows : " To my sister, Eliza A. Leonard, a home at my house as long as she lives; and I direct that my executors attend to this."

The testimony which was offered on the one side and on the other of declarations of the testator, as to his wishes and intentions, was rightly excluded. His intentions must be gathered from the will itself, viewed in the light of the existing circumstances. This is now conceded.

The word " home," when made the subject of a devise, is ambiguous, and may mean merely the use of sufficient room, or it may include a support. We have therefore to put ourselves as far as possible in the testator's place, to ascertain the meaning which it bore in his mind.

The testator left a widow, who was his second wife and childless; a daughter, Mrs. Childs, who was a widow with one child; an adopted son, who was his grandson; and a sister, Mrs. Leonard, who had an unmarried daughter and several married children. His family, at the time of making the will and also of his death, consisted of his wife, his adopted son, his sister, Mrs. Leonard, and her unmarried daughter; also usually a servant to do the house work, and in summer a man to do the work of the house and of the place.

He left property, mostly real estate, of the appraised value above his debts of about $26,500, and of the value as estimated at the time of the hearing of $22,000 or $23,000. Of this, according to· the appraisement, the personal estate amounted to $4,694.94, the real estate to $31,845, and the debts and cost of administration were estimated by the executors at about $10,000. Whether this difference in the net valuation was caused by a lower estimate of values, or by an excess of debts, we do not know. His dwelling-house was large, with a large yard, garden, and stable, situated in the centre of the town of Westborough. It had fifteen rooms, and was arranged to be heated by steam by means of a boiler in the cellar.

His sister Mrs. Leonard was entirely helpless, and unable to move any of her limbs, a widow, about eighty years old, very feeble, and requiring constant attendance. She had lived in the testator's family about ten years. She became an invalid, unable to do work, several years before his death. Before becoming an invalid, when at his house she had assisted in his family enough to earn her living, or more when well. She was paid nothing, but was treated as one of the family. Her only income and independent means of support were a pension of $144 per year. Her daughter lived there also on similar terms, as one of the family. The testator had provided for the daughter partially, not only when she was there, but when she was away.

He had invited Mrs. Leonard to come to his house, and to make it her home; and when she was taken sick, he requested her daughter also to do the same.

It would seem that an attendant upon Mrs. Leonard was necessary. Her daughter, we infer, was without means, and the only income for both was the $144 per year. The daughter's constant attendance upon her mother would interfere with her power to earn money elsewhere; and it is apparent that $144 a year would not be sufficient for the entire support of both, with food, clothing, and fuel.

Under the will, Mrs. Leonard and her daughter were each entitled to one eighth of the residue of the testator's property, as soon as a disposition should be made thereof. The homestead estate was not to be disposed of during Mrs. Leonard's life , at least, it was not to be disposed of unless a reservation should be

made of the right of herself and of her daughter to make it their home during her life. The bulk of the rest of the property was real estate. There was a specific devise to Mrs. Childs of the house she lived in. The value of the homestead, and of the house given to Mrs. Childs, is not stated. The debts were estimated at about $10,000, and the pecuniary legacies amounted to $6,000, with somewhat over $4,000 of personal property. It would seem doubtful whether Mrs. Leonard and her daughter would get anything from the residue, unless the homestead should be sold, subject to her right and her daughter's to make it their home. At any rate, the provision for Mrs. Leonard out of the residue, as a means of present support, would fail. The residue was to be distributed in aliquot proportions when the property should be disposed of, and not till then. And it might be held two years for possible debts of the testator.

If after the testator's death his sister was to continue to live in his house, her own means being inadequate for her support, some further provision must be made for her ; otherwise, if she should stay there, she would be dependent upon charity. When in his lifetime he had invited her to make his house her home, and she accepted that invitation, she received from him her support, after she became unable to work. The word " home " as then understood by both seems to have included maintenance. Under these circumstances, after giving to her a home at his house as long as she lives, he adds, " and I direct that my executors attend to this." These words have a special significance, when the brevity of the article, and indeed of the whole will, is considered. If it were merely intended that she should have a shelter there, these words were unnecessary. But being used as they were, they seem like a special injunction to the executors, to see to it that she was provided with the comforts of a home.

On the whole, it seems to us that the testator intended that the executors should not only allow his sister to live in the house, but that they should furnish to her there her necessary food and fuel, though not her clothing. See *Gibson* v. *Taylor*, 6 Gray, 310 ; *Willett* v. *Carroll*, 13 Md. 459.

The daughter's constant attendance upon her mother being contemplated, the same construction is to be given to article 5

of the will, devising to her a home at the house as long as her mother should live.

A further question is presented, relating to the provision made for Mrs. Childs in article 7, which is as follows: " One half of all my remaining property I give in trust to my executors, to be given to my daughter, Mrs. Ianthe M. Childs, as soon as they shall dispose of the same. . . . The above provision for Mrs. Childs, my daughter, is made on condition she remains single. This provision has reference to what is given my daughter by clause 3 as well."

Clause 3 was as follows: " To my daughter, Mrs. Ianthe M. Childs, the house on High Street in said Westborough, now owned by me, and in which she lives."

Taking the condition in connection with what goes before, it seems to be satisfied by holding that it is to continue until the time comes for distribution of the residue. It means, " on condition she remains single at that time." Otherwise it could never be determined in her lifetime whether she was to take the gift absolutely or not. The executors are to give her share of the residue to her as soon as they shall dispose of the same. The condition subsequently added relates to that time. If this construction is not adopted, the executors are not to give her share of the residue to her, but are to hold it in trust. It does not appear to us that the testator intended to tie up his property for a great length of time.

The three thousand dollars given to the testator's adopted son is to go to him absolutely, free from any trust.*

*Decree accordingly.*

J. *Lowell & L. M. Child*, for Mrs. Leonard and her daughter. *F. P. Goulding & F. L. Dean*, for Mrs. Childs.

---

* The provision was, " To my nephew and adopted son, the sum of $3,000 (three thousand dollars), in trust to my executors."