## JOHN H. WHITING'S APPEAL FROM PROBATE.

Third Judicial District, New Haven, January Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

By the 6th clause of her will a testatrix gave one half the residue of her estate to the children of W in fee, and the net income thereof to W during his life on the express condition that W should pay her or her executor $6,000, which sum the will declared was due from W for certain securities he had received from the testatrix and converted to his own use. The same clause also provided that this $6,000 should be treated as part of the estate given to W for life, and to his children on his decease. Subsequently an agreement was executed by the testatrix and W, which the latter claimed operated as an acknowledgment by the testatrix of the settlement of said indebtedness, and freed the bequest to him of all conditions. Still later the executrix made a codicil in which she ratified and confirmed the provisions of her will and revoked all instruments of a testamentary nature theretofore made. W did not pay the $6,000 either to the testatrix or to her executor, and the residuary estate was accordingly divided among the legatees other than W, and the latter appealed from the decree accepting such distribution. Held :—

1. That the re-publication of the will, in the codicil, gave to clause six the force and effect of a new will as of the date of the codicil, and that W must pay the $6,000 given to his children as a part of the estate of the testatrix, or surrender the life estate bequeathed to him on that condition.

2. That whether W was or was not in fact indebted to the testatrix at the time the codicil was made, was immaterial. Whatever the fact might

be, the testatrix had a legal right to make the gift upon the assumption that $W$ was indebted, and if he desired to accept and take the benefit of the gift he could not contest the conditions upon which it was made, nor introduce the agreement in evidence to alter the clearly expressed meaning of the will.

[Argued February 6th—decided February 21st, 1896.]

APPEAL from certain orders and decrees of the Court of Probate for the District of New Haven, ascertaining the residuary legatees under the will of Mary A. Beers, deceased, and ordering distribution among them, and accepting the distribution made under said order, taken to the Superior Court in New Haven County and tried to the court, *Hall, J.;* facts found and judgment rendered for the appellees, and appeal by the appellant for alleged errors in the rulings of the court. *No error.*

Upon the settlement of the administration account, the Court of Probate ordered the residuary personal estate remaining in the hands of the executors to be distributed among William E. Downes, trustee, and the children of John H. Whiting. The distribution included, in the estate distributed to the children of John H. Whiting, a debt of $6,000 due from said Whiting; this distribution was accepted by the court and ordered on record. John H. Whiting alleged that he was aggrieved by these orders, and appealed to the Superior Court. The sixth clause of the will of Mrs. Beers, dated May 2d, 1891, was as follows:

" All the rest and residue of my estate, both real and personal, I give, bequeath and devise to William E. Downes, of New Haven, Connecticut, in trust, however, to hold, invest, reinvest, change and shift investments and reinvestments, to collect the income, and, except in the contingency hereinafter mentioned, to pay over one half of the net income yearly to my grandson, John H. Whiting, during his life, and upon his death to deliver one-half of my said residuary estate to the children of said John H. Whiting, issue of his marriage with Adeline Blake, share and share alike; and I give and bequeath said one-half of my said residuary estate to his said children, and to those who legally represent them, subject to the provisions of

this my last will; and to pay over one-half of the net income of my said residuary estate to Jennie Downes Whiting, my granddaughter by marriage with my grandson, William W. Whiting, during her life, and upon her death to deliver the one-half of my said residuary estate to the children of said Jennie Downes Whiting by her said husband, William W. Whiting, share and share alike; and I give and bequeath, subject to the life use of their mother, said one-half of my said residuary estate to her said children and to those who legally represent them.

"My grandson, John H. Whiting, has received from me securities of The Air Line Railroad Company, in value about six thousand dollars ($6,000), which I understand he has sold and has taken the proceeds. For the purposes of this will I estimate the value of said securities to be six thousand dollars ($6,000). That six thousand dollars belongs to me, and my will is that it be treated and reckoned as part of my estate, and is to be at all times regarded and treated as part of the estate given by this will to said John H. Whiting for life, and to said children at his death, both in ascertaining the amount of net income to be paid over, and the amount of property to be divided at the termination of the life estate. The gift of one-half of the net income to John H. Whiting during his life is upon the express condition that said John H. Whiting pay the said sum of six thousand dollars hereinbefore referred to to me in my lifetime, or to my executor or administrator upon demand made after my death. And in case said John H. Whiting fails or omits to pay said sum of six thousand dollars, as above provided, the gift to him is thereupon hereby revoked. And in that contingency one-half of my said residuary estate, counting and reckoning said six thousand dollars as part and parcel of such one-half, I give and bequeath absolutely to the said children of said John H. Whiting by his said first wife, share and share alike, and to those who legally represent said children, absolutely, and in fee simple."

A codicil to this will, dated May 7th, 1892, was as follows:—

"I, Mary Ann Beers, of the city of New Haven, having made

and executed my last will and testament, dated the second day of May, A. D. 1891, and having made and executed a codicil thereto, dated the twenty-seventh day of July, A. D. 1891, do hereby make, publish and declare this further codicil to and as a part of my said last will.

"First. I hereby revoke any will and codicil, and every instrument of a testamentary nature whatever, made or executed since the twenty-seventh day of July, A. D. 1891, if any such exists, and I hereby reaffirm, establish, and declare the last will and testament executed by me, and dated May second, A. D. 1891, as modified by the codicil thereto, dated the twenty-seventh day of July, A. D. 1891, to be my last will and testament; and I hereby ratify and confirm the provisions of said will and said codicil thereto.

"Second. I nominate and appoint Hobart L. Hotchkiss, of New Haven, to be a co-executor of my said last will.

"In witness whereof I have hereunto subscribed my name and affixed my seal, the seventh day of May, A. D. 1892.

"MARY ANN BEERS [L. S.]"

The appellant's reasons of appeal alleged an executed agreement between Mrs. Beers and the appellant, dated October 1st, 1891, as sufficient reason for setting aside the orders of distribution. Upon the trial the Superior Court excluded the evidence of this agreement, and the appellant excepted. The appeal to this court is from the judgment affirming the orders of the Court of Probate; and seeks a new trial on account of error in excluding this evidence. The other facts are sufficiently stated in the opinion.

*Henry G. Newton*, for the appellant (plaintiff).

The question here is as to the admissibility of the evidence. The question of its sufficiency would have been a question of fact for the court below to decide if it had been received. Suppose the agreement had contained these added words: "And the execution of this agreement shall be a fulfillment of the condition attached to the gift to said John H. Whiting in the will of said Beers." Would it not then have been

a fulfillment? If Mrs. Beers preferred to keep the precise terms of the will secret, and to execute an instrument which would be a fulfillment of the condition, had she not a right to do so? ˙ The statements of Mrs. Beers that Mr. Whiting owed her nothing, very strongly corroborate the view that this agreement was intended to extinguish the indebtedness provided for in the will, and to be a payment of the amount therein specified in the lifetime of Mrs. Beers. The execution of this agreement would amount to an estoppel as against Mrs. Beers. What will operate as an estoppel against Mrs. Beers, will also estop her representatives and those claiming under her. The depositions prove that subsequent to the execution of all the wills and codicils, Mrs. Beers repeatedly declared that whatever the appellant had received from her was a free gift, and were, therefore, admissible to show a substantial compliance with this provision of the will. In so far as the $6,000 is treated in the will as an advancement, the cases show that the advancement may be turned into a gift. In so far as it is treated as a debt, it is clear that the debt may be discharged by a separate agreement. *Sherwood* v. *Smith*, 23 Conn., 515; *Clark* v. *Warner*, 6 id., 355. The Court of Probate has no power to decree a forfeiture. *Treat* v. *Treat*, 35 Conn., 210, 215. It was the duty of the court to order the fund to be delivered to the trustee, not to order distribution. The trustee would then decide to whom to pay the income, and any one aggrieved could bring a suit for relief, or the trustee could ask for instructions, or bring an action in the nature of interpleader. *Treat* v. *Treat*, *supra*.

*John W. Bristol* and *Samuel A. York*, for the appellees (defendants).

The original will, having been re-established by a codicil executed subsequent to the date of the alleged agreement, must speak from that date, and could not thereafter be revoked in any other way than that pointed out by § 642 of the General Statutes. The person claiming a beneficial interest under a will cannot set up any claim which would

prevent the will from having its full operation. 1 Jar. on Wills, 415 ; *Hyde* v. *Baldwin*, 17 Pick., 303 ; *Smith* v. *Smith*, 14 Gray, 532 ; *Watson* v. *Watson*, 128 Mass., 152–154 ; *Hapgood* v. *Houghton*, 22 Pick., 480 ; *Ward* v. *Ward*, 15 id., 526. The alleged agreement was a mere matter of contract between the testatrix and the appellant, and the Court of Probate could not be required to pass upon its validity and effect, for it has no authority in a question of this nature. *Homer's Appeal from Probate*, 35 Conn., 114 ; *Treat* v. *Treat*, 35 id., 213 ; *Hewitt's Appeal from Probate*, 53 id., 24 ; *Dickinson's Appeal from Probate*, 54 id., 224 ; *Mallory's Appeal from Probate*, 62 id., 218 ; *Hall* v. *Pierson*, 63 id., 332. The testimony offered by the appellant in the Superior Court was manifestly irrelevant. It was an attempt to make a new or different will for the testatrix, by showing her declarations made to various parties regarding her feelings toward the appellant, and what her desires or intentions were regarding him. Nor was the testimony offered and given, that she had waived the provisions of her will, either by the written agreement, or any partial performance of it, by the appellant, competent. It does not appear upon the record that the appellant had any interest in the residuary estate of Mary Ann Beers, and the Superior Court should therefore have granted the motion to erase, and dismissed this appeal. The will specifically says that Whiting shall take nothing unless he pays back the $6,000 which he had misappropriated, and there is nowhere any allegation that said payment was ever made. *Swan* v. *Wheeler*, 4 Day, 137 ; *Norton's Appeal*, 46 Conn., 527 ; *Saunders* v. *Denison*, 20 id., 521 ; *Denning's Appeal*, 34 id., 201 ; *Campbell's Appeal*, 64 id., 277 ; *Olmstead's Appeal*, 43 id., 110.

HAMERSLEY, J. Upon the settlement of the administration account, it became the duty of the Court of Probate to make an order for the distribution of the residuary personal estate in the hands of the executor. The will of Mrs. Beers gave one half of that estate to the children of John H. Whiting, to be paid over to them upon the settlement of the estate,

unless said Whiting should pay, either to the testatrix during her life or to her executor upon demand after her death, the sum of $6,000 (assumed by the will to be due from Whiting to the testatrix); in which event said one half of the residuary estate was to be paid to William E. Downes, to be held in trust during Whiting's life, and then to be delivered to said children. If in fact the $6,000 had been paid, the estate must be distributed to Downes, trustee; and if it had not been paid the distribution must be to the children of Whiting. The determination of this fact of payment is a necessary incident to the exercise of the power of distribution vested in the Court of Probate; no question of forfeiture of vested rights, or title to property such as has been held to be without the jurisdiction of a court of Probate, was involved. *Hall* v. *Pierson*, 63 Conn., 332, 344.

Upon the trial in the Superior Court the appellant offered certain evidence which the court ruled to be inadmissible. Such ruling is the only error assigned in the appeal to this court. The evidence consisted of a memorandum of agreement between the appellant and Mrs. Beers, as explained by the testimony of Whiting and others. The "reasons of appeal" filed in the Superior Court set up this memorandum and the allegations of the fulfillment of its conditions by Whiting, as the only ground for the appeal from the orders of the Court of Probate. The questions thus presented to the Superior Court were : Have the conditions of the memorandum of agreement been carried out by Whiting? Is this agreement, together with such execution on his part, a payment of the $6,000 as required by the will?

The record shows that the evidence excluded constituted the appellant's whole case. The appellees objected to its admission. Under these circumstances it was agreed by counsel that the evidence should be received, and that afterwards the objections to its admissibility might be renewed and the court then rule upon the same. Accordingly the memorandum was read to the court, the appellant was sworn as a witness, examined and cross-examined, and after the whole case of the appellant had been thus heard, the appel-

lees renewed their objections to the evidence, and the court excluded the same. No ground of objection was specified by the appellees, and no reason for exclusion is stated by the court. The appellant's claim in behalf of the admissibility of the evidence is stated in paragraph $9\frac{1}{2}$ of the finding. It is that the evidence "tended to show and did show a sufficient compliance with the condition of said will to enable appellant to hold the property therein given to him." The court overruled this claim, and held that all the testimony did not show a compliance on the part of the appellant with the condition of the will. The appellant then rested, the appellees offered no evidence, and the court rendered judgment that the appeal be dismissed and that the orders of the Court of Probate be affirmed.

If the admissibility of this testimony had depended on its relevancy to the fact of a settlement between the appellant and the testatrix of his indebtedness to her for the proceeds of the Air Line securities mentioned in the will, it might have been admissible. But its admissibility did not depend on the tendency or sufficiency of the evidence to prove a settlement as claimed by the appellant.

If such settlement were made, it was made some six months prior to the execution of the second codicil of the will, and that codicil was made in view of and with plain reference to the alleged settlement. This is apparent from the record. The will was executed May 2d, 1891. It bequeaths specific sums to three legatees, gives the whole residue, one half to William E. Downes in trust to pay the net income to her granddaughter by marriage, Jennie Downes Whiting, and upon her death to deliver said one half to the children of said Jennie Whiting; and the other half (specially including in that half, as property bequeathed, a debt of $6,000 due from Whiting to the estate) to the children of her grandson John H. Whiting (the appellant). (But if said Whiting shall pay the sum of $6,000—in the manner above stated—then the one half, including the sums so paid, is to go to said Downes in trust to pay the net income to Whiting during his life, and upon his death to deliver the same to his children, in pur-

Whiting's Appeal from Probate.

suance of the bequest to them.)   The will appoints William
E. Downes executor.

The first codicil is executed July 27th, 1891; it changes
one of the three legacies and republishes the will.  Octo-
ber 21st, 1891, the following paper is executed: "Memoran-
dum of agreement made this 21st day of October, 1891,
between Mary Ann Beers and John Whiting, both of New
Haven.  Whereas, the said John H. Whiting has received
from the said Mary Ann Beers the sum of nine thousand
dollars, upon which he promises to pay interest to her at the
rate of four per cent. so long as she lives, payable quarterly;
and it is understood and agreed that if the said John H.
Whiting survive her the said principal sum shall be a free
gift from the said Mary Ann Beers, and not in any way
charged to or accounted for by him, the said John H. Whit-
ing, and that if she, the said Mary Ann Beers, shall survive
him the same shall be paid back to her, and not otherwise :
Now therefore, to secure such payment it is agreed that he,
the said John H. Whiting, shall place in the hands of Henry
Stoddard, Esq., an insurance policy for said sum of nine
thousand dollars upon the life of said Whiting and a note for
said sum of nine thousand dollars, to be held by him, the
said Stoddard, until the death of one or the other of the par-
ties hereto, and to be by him then delivered unto the survivor.
Mary Ann Beers.   John H. Whiting."

May 7th, 1892, the second codicil was executed.  It re-
vokes "any will and codicil, and every instrument of a tes-
tamentary nature whatever, made or executed since the 27th
day of July, A. D. 1891, if any such exists," and then says:
"I hereby re-affirm, establish, and declare the last will and
testament executed by me, and dated May 2d, A. D 1891, as
modified by the codicil thereto, dated the 27th of July, A. D.
1891, to be my last will and testament; and I hereby ratify
and confirm the provisions of said will and said codicil there-
to."

The last codicil executed October 7th, 1892, refers only to
two of the legacies ratifying the provisions of the will and
codicil.

Republication of a will brings it to date and makes it speak at that time in respect to matters which have arisen between its first execution and the republication. *Giddings, Executor,* v. *Giddings,* 65 Conn., 160. It has often been held that a codicil which recognizes the existence of a former will operates as a republication. But in this case the republication is direct. The intent of the testatrix is expressed with unmistakable precision. Since the former will was made she had executed a document which might be claimed as giving to Whiting, in case he survived her, the fund of $6,000 which by the will was bequeathed to his children. She revokes this "instrument of a testamentary nature," and declares the former will "to be my last will and testament," and ratifies and confirms "the provisions of said will."

If the testatrix on May 7th, 1892, had executed a new will in which she had referred to the provisions of the former will in relation to Whiting and his children, and to the agreement of October 21st, 1891, and then disposed of her estate by the same language used in her former will, the effect of such new will would be the same as is that of the codicil which she did execute on that day; and the intent of the testatrix to give the $6,000 which on that day (May 7th, 1892) she declares she understood to be due her from Whiting, to her great-grandchildren, and to give Whiting the income of that fund and of other property upon his payment to herself or her executor of the sum of $6,000, would be no more clearly expressed.

It is patent and admitted that if Whiting did owe Mrs. Beers $6,000, as stated in her codicil of May 7th, 1892, he has not paid it since that time. The evidence excluded by the Superior Court was not offered, and could not have been received, for the purpose of altering the clearly expressed meaning of the will; it could only be relevant for the purpose of showing that Whiting was not indebted to the testatrix as stated in her will. In other words, the appellant undertook to prove that the fund of $6,000 given by the testatrix to her great-grandchildren, coupled with a gift to him

in view of such disposition of the fund, was not in fact the property of the testatrix, but was the property of himself. And for such purpose the testimony was wholly irrelevant. If it proved the appellant's contention, it also proved that he was entitled to take nothing under the will, and that the order of distribution must stand.

Where a will bequeaths property of the testator to a legatee, coupled with a bequest of other property to another, such legatee in setting up any right or claim of his own to such other property, surrenders all interest in the property so bequeathed to him. This rule springs from manifest principles of equity, *i. e.*, maxims of honesty, is firmly settled, and is good in law as well as in equity. *Carter's Appeal*, 59 Conn., 576, 587 ; *Hall* v. *Pierson*, 63 id., 332, 345 ; 3 Bac. Abr., 314 ; *Watson* v. *Watson*, 128 Mass., 152.

In *Cooper* v. *Cooper*, L. R. 6 Ch. App., 15, the facts were somewhat analogous to the facts in this case, and the court says : "She (the testatrix) attempts and purports to give by her will that which was not hers but her children's. It does not appear to me in any wise material by what previous titles it had become the children's. At her death they are found to be the true owners of property disposed of by her, and at the same time they are found to be named as objects of her testamentary bounty. That seems to me to state the requisites, and the only requisites for raising the obligation to elect."

In this case the appellant set up in the Superior Court his own claim to the $6,000 fund the testratrix had bequeathed to his children; it was immaterial whether this claim was well founded or not; he could not enforce it without losing his beneficial interest under the will ; and so the evidence offered by him that it was well founded, could not affect the validity of the orders of the Court of Probate, and the appellant cannot complain of its rejection. Whether John H. Whiting can now elect to carry out the provisions of the will and to pay the $6,000 he has refused to pay upon demand, is a question not involved in this proceeding and not considered.

There is no error in the judgment of the Superior Court, and new trial is denied.

In this opinion ANDREWS, C. J., TORRANCE and FENN, Js., concurred.

BALDWIN, J. (concurring in the judgment). The reasons of appeal filed in the Superior Court, after describing the agreement between Mrs. Beers and the appellant of November 21st, 1891, a copy of which was annexed as Exhibit B, stated that the appellant "duly paid the interest to said Mary Ann Beers specified in said Exhibit B." No other allegation was made of his fulfillment of the terms of the agreement.

Under these pleadings, proof that payment of interest had been waived was inadmissible. The only question presented was whether it had been actually made. The exclusion of the evidence offered by the appellant being thus fully justified, while I concur in the affirmance of the judgment of the Superior Court, I deem it unnecessary to express an opinion as to the effect of the republication of the will after the execution of the agreement.