CENTRAL HANOVER BANK AND TRUST COMPANY, TRUSTEE (WILL OF GEORGE WILLIS PETERS) vs. LUCY P. NESBIT ET ALS.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 12th—decided July 30th, 1936.

*James A. Dougherty,* for the appellants (defendants John D. Peters et als.).

*C. Driscoll Grimes,* for the appellees (defendants John W. Peters et al.).

*Mortimer L. Doolittle,* for the plaintiff.

BROWN, J. The defendants in this action are the four brothers and sisters of the testator and the wife of one of these brothers, and his seven grandchildren, all appellees herein, and also his four children who are the appellants. In response to the plaintiff's complaint, the court adjudicated six questions as to the construction and legal effect of the testator's last will and codicil, the defendants by their answers having admitted the allegations of the complaint and set forth their respective claims with regard to these questions.

From the court's decision upon three of these questions, which are hereinafter stated, and upon its ruling that it should consider certain facts, stipulated to be true but the right to use which was disputed, as bearing on its construction of the third and twenty-first paragraphs of the will, the four children of the testator have appealed.

Following are the undisputed material facts: The testator died March 19th, 1930, in Greenwich, leaving a will dated January 25th, 1924, with a codicil thereto dated October 19th, 1926, which were duly approved and admitted to probate, and the plaintiff has duly qualified as successor trustee thereunder. The third paragraph of the will establishes a trust fund of $25,000, the principal and income of which the trustee is to use to provide monthly payments of $75 to the testator's brother John W. Peters for life, and then to his wife Appie B. Peters for life should she survive him, so long as she remains his widow, and then to pay over the balance of the principal to increase the residuary trust fund under the will. The twenty-first paragraph of the will gives the use of ♯ 52 Milford Avenue, Newark, New Jersey, to Mr. and Mrs. Peters for their joint lives, except that should the wife survive her husband, and remarry, her right to use the property thereupon terminates, and provides that at the expiration of these life estates, the property shall be utilized to increase the residuary trust fund. It then goes on to provide: "and I direct my said Trustee out of my residuary estate to pay the taxes, assessments, insurance premiums and ordinary expenses for the general upkeep of said property while occupied by my said brother John W. Peters and his wife Appie B. Peters, and until sold as above directed." The twenty-third paragraph of the will provides that the entire residue and remainder of the testator's estate,

"including Funds left in the hands of my Trustee at the termination of the Trusts, created under articles second, third, fourth and fifth of this Will," shall go to the trustee in trust to be divided by it into four equal parts, the income from each of which shall go to one of the testator's four children for life, and upon the death of such child in each instance the principal of such part to be distributed in equal shares among the testator's seven grandchildren, their heirs and assigns forever. Paragraph fifth of the will provides for a $30,000 trust fund, the income therefrom to be paid in the manner specified therein to two sisters and a brother therein named. The fourth paragraph of the codicil provides for the payment of taxes on the property occupied by these three beneficiaries, by virtue of a paragraph hereinafter referred to.

Since the plaintiff has been acting as trustee under the twenty-third paragraph of the will, it has received certain stock dividends on the property held in trust for each of the four appellants, and also on property held by it under the trust in an undivided securities account which property will ultimately be divided among the beneficiaries under this paragraph of the will.

The three questions propounded in the complaint, the answers to which are assigned as error, are as follows:

"(d) Are the ordinary expenses for the general upkeep of the property described in Paragraph Twenty-first of said Will to be paid out of the principal property constituting the residuary estate or out of the income from the residuary estate?

"(e) Do the ordinary expenses for the general upkeep of the property described in Paragraph Twenty-first of said Will include special assessments, plumbing repairs, cleaning and conditioning of flues,

restoring ceilings, repairing stairways, repairing furnace, relaying floors, scraping floors, installing new heating equipment, painting and papering rooms, and paying for the coal used by the life tenants of said trust?

"(f) Should the stock dividends received by Central Hanover Bank and Trust Company as Trustee under Paragraph Twenty-third of said Will, be added to the principal of said trust property or distributed to the life beneficiaries of said trust as income?"

The first four assignments of error raise the question as to whether the court erred in considering as evidence the facts which were stipulated to be true. These facts relate to the physical and financial condition of these two life tenants and to the treatment accorded them by the testator during his lifetime. The court ruled this evidence to be admissible for the limited purpose of showing the situation of the testator, and then considering these provisions of the will in the light of it, and relied upon the evidence to that extent in determining its answer to question (e). In *Stearns* v. *Stearns,* 103 Conn. 213, 219, 130 Atl. 12, we approved Wigram's fifth proposition: "For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, . . . for the purpose of enabling the court to identify the person or thing intended by the testator." Wigram, Wills (5th Ed.) p. 56. But we also approved Schouler's statement that the extrinsic evidence admissible under this proposition is received in order to aid a doubtful interpretation but not so as to materially qualify or contradict an instrument or

interpolate a testamentary gift which its own tenor did not justify. See also *Day* v. *Webler,* 93 Conn. 308, 312, 105 Atl. 618; *Hartford-Connecticut Trust Co.* v. *Thayer,* 105 Conn. 57, 64, 134 Atl. 155. In so far as the stipulated facts tended to throw light upon the intent of the testator as expressed in the words of his will, the trial court was entitled to consider them. But it could not, upon the strength of those facts, so interpret the will as to give to the language of the testator a meaning which the words used in it would not reasonably bear.

The third paragraph of the will provides for the monthly payment of $75 to Mr. and Mrs. Peters in the manner above stated, and the twenty-first makes similar provision for their life use of the property at ♯ 52 Milford Avenue, concluding with the words directing the trustee of the residuary estate "to pay the taxes, assessments, insurance premiums, and ordinary expenses for the general upkeep of said property while occupied" by these two appellees. The word, ordinary, means: "common, customary, usual." The word, general, means: "of or pertaining to the whole." The word, upkeep, means: "the act of keeping up, or maintaining; maintenance; repair." The word, property, means: "that to which a person has a legal title." Webster's New International Dictionary (2d Ed.). The meaning of the sentence in question is clear according to the words used in their ordinary and primary meaning as above defined. "Property" does not mean "home." Nor can the ensuing words, "while occupied by my said brother John W. Peters and his wife Appie B. Peters," be fairly construed to qualify it in such manner as to give it that connotation. These merely define the duration of the period for which the payments are to be continued. This case, where the word "property" is used, is clearly distin-

guishable from the case of *Denfield, Petitioner*, 156 Mass. 265, 30 N. E. 1018, primarily relied upon by the appellees, in which a provision of the will for the maintenance of the "home" was regarded as ambiguous.

The trial court answered question (e) "Yes." By their brief the appellants limit their claim of error upon this issue to the court's inclusion of these two items: first, installing new heating equipment, and second, paying for the coal used by the life tenants. It is the "ordinary expenses for the upkeep of said property" as such, and not as a home, for which provision is made. From the definitions already given of the words in this clause, it is evident that this means as used in the will that in addition to the taxes, assessments and insurance premiums specificially mentioned, the trustee is to pay out of the residuary estate what is necessary to keep this property in proper condition and repair for occupancy, whether this involves, among other things, merely repairs to existing heating equipment already installed, or the replacement thereof by a new installation when repair of the old proves no longer feasible. This is necessarily involved in the ordinary expenses of general upkeep of the property in the course of time as circumstance requires. Any new installation limited to such replacements essential to maintaining the premises in suitable condition for occupancy falls within the meaning of "ordinary." Such as go beyond this limitation do not. With regard to a similar provision for maintenance of property in *Hayward* v. *Hayward*, 95 Conn. 122, 134, 111 Atl. 53, we said: "The injunction to maintain the property was one to preserve it in substantially the same physical condition it was in when it passed out of the testator's hands at his death. The duty imposed upon the trustees, therefore, includes

not only that of repair in order to restore where there has been deterioration, but also such care and attention as may be reasonably necessary to prevent deterioration, and that of replacement where it becomes necessary by reason of ravages of time, the elements, or use, in order that pre-existing conditions may be reasonably maintained." The provision of fuel for heating the house, however, cannot be brought within the reasonable import of the provision for the upkeep of the property. Indeed, that the testator did not intend that it should be included is evidenced by the concluding words of the paragraph which provide that the same expenditures which are to be made during the occupancy of the premises by Mr. and Mrs. Peters, should continue after the death of the survivor until the property is sold. The upkeep of the property would not be appreciably involved if fuel were never furnished. The court did not err in concluding that new heating equipment must be paid for by the trustee from the residuary estate, within the limits above suggested, but it did err in its conclusion that it must pay for fuel.

The next two assignments of error challenge the court's answer to question (d) as to whether the ordinary expenses for the general upkeep of the ‡ 52 Milford Avenue property are to be paid out of the principal of the residuary estate or out of the income thereof. By its answer the court ruled that these expenses for the upkeep of the property be paid out of income from the residuary estate, but in so far as that is insufficient, out of principal. The appellants contend these items should be ordered paid entirely out of principal. In the absence of any express direction in the will to the contrary, or other good reason appearing, such is the correct construction of this provision. Residue means that portion of an es-

tate that remains after the payment of debts, legacies and administration charges. *Stanley* v. *Stanley,* 108 Conn. 100, 109, 142 Atl. 851; *Phelps* v. *Robbins,* 40 Conn. 250, 264. It is that which is left or what remains, after the payment of all these, including funeral charges, and other proper charges and commissions. 54 C. J. 715, § 2.

As we have pointed out, the twenty-third paragraph of the will directs the trustee, after dividing the residue into four equal parts, to pay the income from each of these quarters to one of the testator's four children, for life, and, upon the death of such children, to distribute the principal of such quarter to his seven grandchildren. In the light of the meaning of the word, residue, as above defined, and the specific provision for the payment of income only to the testator's own children, it is reasonable and natural to construe that it was not his intent to increase the residuary bequest of principal to his grandchildren, at the expense of the bequest of income only to his children, by charging these payments against income instead of principal. The lack of any express provision charging these payments against the income of the residue, is of itself of significance, rendered the more emphatic by the express provision in the fourth paragraph of the codicil for payment out of the residuary estate of taxes and assessments on another property occupied by two sisters and another brother of the testator as life beneficiaries, in these words: "I desire that provision be made for payment of these taxes each year before any distribution of income from my residuary estate is made." We construe the provision of the twenty-first paragraph, providing for these payments "out of my residuary estate," to mean out of the principal of the residue. The court erred in so

far as by its answer to question (d) it held them payable out of income.

The last four assignments of error attack the court's conclusion that stock dividends received by the plaintiff as trustee should be added to the principal of the trust property, in answering question (f). In such a situation as here disclosed, § 4966 of the General Statutes provides that "all stock dividends made by such corporation . . . shall belong to the principal of the trust fund, and shall not be deemed a part of such use or income, unless . . . the corporation making such dividend shall expressly declare the same to be made from the earnings of the corporation since the formation of the trust." While exhibits in the record indicate that some at least of these stock dividends were declared made from earnings, in no case does it appear with certainty that they were declared from earnings accruing since the formation of the trust. The appellants in their brief, relying upon this state of the evidence, contend that because thereof the court should have refused to answer this question. This was an issue the plaintiff was seeking upon its complaint to have adjudicated, and the appellants by their amended answer and claims interposed thereto, claimed that such stock dividends should be distributed to them as life beneficiaries under the trusts as income and not go to principal, "unless it is proved that said dividends were actually stock dividends and that the corporation did not declare the same to be made from the earnings of the corporation since the formation of the trust." Upon the issues so framed, the burden was on the plaintiff trustee which had instituted this proceeding seeking advice, to see to it that the facts essential to the determination of this question were laid before the court. It is a part of the trustee's duty to ascertain such facts,

which information as the legal owner of the stock, it obviously has a more advantageous opportunity to obtain than the beneficiaries. Having failed to present these facts to the court, the plaintiff was not entitled to an answer to this question, and there was nothing upon which the court could base an adjudication of it. The court should have refused to decide this issue, at least unless and until the essential facts had been stipulated into the record. Therefore in deciding upon the present record that these stock dividends should be treated as principal rather than income, it was in error. The court cannot determine how these dividends or similar dividends which may accrue in the future should be treated by the trustee, until in the discharge of its duty, the latter has obtained the necessary information with regard thereto, and presented it to the court in a proper proceeding for determination and advice.

There is error in part, and pursuant to this opinion the judgment is set aside and the trial court directed to enter judgment in the same terms as that now on file, except that, under (d), all of the paragraph be stricken out after the word "Answer:" and the following be substituted: "That under the provisions of Paragraph Twenty-first of said Will, the ordinary expenses for the general upkeep of the property known as ♯ 52 Milford Avenue, in the City of Newark, State of New Jersey, are to be paid out of the principal of the residuary estate;" and except that, under (e), all of the paragraph be stricken out after the word "Answer:" and the following be substituted: "That the ordinary expenses for the general upkeep of the property at ♯ 52 Milford Avenue, in the City of Newark, State of New Jersey, under the provisions of Paragraph Twenty-first of the Will, include special assessments, plumbing repairs, cleaning and conditioning of

flues, restoring ceilings, repairing stairways, relaying floors, scraping floors, painting and papering rooms, repairing furnaces, and when repair of such furnaces or of the heating equipment necessarily incidental thereto proves no longer feasible, rendering a replacement thereof by new equipment essential to maintaining the premises in suitable condition for occupancy, but only to the extent so required, installing new heating equipment;" and except that, under (f), all of the paragraph be stricken out after the word "Answer:" and the following be substituted: "The court refuses to answer this question because there are no sufficient facts of record warranting the determination thereof."

No costs will be taxed in favor of any party in this court.

In this opinion the other judges concurred.