FIRST NATIONAL BANK AND TRUST COMPANY, EXECUTOR AND TRUSTEE, ET AL. (WILL OF LILLIE A. COE) *v.* LILLIAM W. BAKER ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued April 8th—decided June 17th, 1938.

*Charles P. Roraback,* for the plaintiffs.

*Lester W. Schaefer,* with whom was *Jonathan F. Ells,* for the appellants (defendants The East Avon Ecclesiastical Society et al.).

*Barclay Robinson,* with whom was *Thomas L. Archibald,* and, on the brief, *William W. Fisher,* for the appellants (defendants Sherman W. Eddy et als.).

*Charles M. Lyman,* with whom was *William F. Healey,* for the appellant (defendant Edward C. Wheeler).

MALTBIE, C. J. This action was brought by the executors and the trustee under the will of Lillie A. Coe, deceased, to secure an interpretation of the will and advice as to their duty. On June 11th, 1923, the testatrix made a will the terms of which, so far as relevant to the questions before us, were as follows: She gave a large number of legacies in varying amounts to relatives, one of them being $5000 to "my nephew Edward C. Wheeler"; she established three trusts in the amounts of $30,000, $25,000 and $20,000, respectively, the income to be paid to a named beneficiary or beneficiaries and in each instance provided that "at the termination of said trust the funds constituting it to become a part of my residuary estate"; the executor was directed during the settlement of the estate and until the legatees received their legacies "to pay monthly out of the income of the estate interest at the rate of five per centum per annum on the legacies bequeathed" to certain but not all legatees, and until the final settlement of the estate to pay interest monthly at the same rate to the beneficiaries of the trusts on their respective amounts; out of the residue of the estate $125,000, or if the residue was less than that, all the residue was given to trustees to build and maintain a community house in the town of Avon to be called The Amos Wheeler Memorial, and if the residue exceeded $125,000 the excess was given to a niece and certain nephews.

The testatrix thereafter made five codicils altering or adding to the provisions of the will and in each she "republished and confirmed" the will except for the changes made in it. In the first codicil she made a

further legacy of $5000 to "my nephew Edward C. Wheeler," to be in addition to the legacy given in the will. In the fourth she established two further trusts of $30,000 and $10,000, respectively, the income to be paid to a named beneficiary during his life and provided that at the death of the beneficiary or at her own death should she survive him the trustee should pay or distribute the fund, in one instance, "under the terms of the residuary clause of my said will" and, in the other, "in accordance with the residuary clause of my said will." The fifth and last codicil was made December 9th, 1935, the day before the testatrix died; the only change made was the designation of a trust company to act jointly with the executor named in the will; and this codicil concluded with a statement that: "I hereby republish and confirm my said will and codicils thereto in all respects except as altered by this codicil." The life beneficiary in one of the trusts established in the will has died.

The testatrix, when the will was executed, had a nephew Edward C. Wheeler but he died December 8th, 1933, before the execution of the last codicil. He had a son of the same name. The son claimed the legacies originally given to his father, but the trial court held that he was not entitled to them and this conclusion is one of the grounds of appeal. The son is, of course, not correctly described as "my nephew Edward C. Wheeler." *Matter of Woodward,* 117 N. Y. 522, 525, 23 N. E. 120. The accepted rule of interpretation of wills is that "the primary and usual meaning of a word is to be given it unless the testator's use of it in another and reasonable sense is so clearly indicated, upon examination of the entire will, as to overcome its ordinary signification and satisfactorily establish the unusual meaning contended for." *City Bank Farmers Trust Co.* v. *Lewis,* 122 Conn. 384, 387, 189 Atl. 178.

We find nothing in the provisions of the will which indicates that the testatrix used the word "nephew" otherwise than with its primary significance. Indeed, in several places in it, where she made gifts to grandnephews and grandnieces she refers to them as children of her nephews and nieces. The son, however, relies upon the fact that the republication of the will in the last codicil is in effect the making of a new will at that time and argues that, as Edward C. Wheeler, the father, was then dead and the gift to him could not take effect the testatrix could not have intended to continue a provision wholly nugatory and that he, though a grandnephew, is to be regarded as the beneficiary intended. That the republication of the will in the codicil is in effect the making of a new will, with such changes in it as are contained in the codicil, as of the date of the codicil, has many times been held. *Luce* v. *Dimock,* 1 Root 82; *Giddings* v. *Giddings,* 65 Conn. 149, 160, 32 Atl. 334; *Whiting's Appeal,* 67 Conn. 379, 388, 35 Atl. 268; *Shey's Appeal,* 73 Conn. 122, 46 Atl. 832; *Griffith* v. *Adams,* 106 Conn. 19, 33, 107 Atl. 20. That does not mean, however, that in determining the construction of the instrument the development of the testamentary intent through the will and the codicils and the circumstances surrounding their execution are to be disregarded and the whole will read as though it were all originally made at the date of the codicil. "From a will and its several codicils, like a statute with its later amendments, the maker's full intention is to be gathered." *Giddings* v. *Giddings,* supra.

The gifts to "my nephew Edward C. Wheeler" were valid and effective until the death of the father before the making of the last codicil. The failure of the testatrix to make any change in the provisions for him might well have been due to an oversight on her part

or to a willingness to abide by the effect of his death before her own as causing the legacies to lapse. There is not the same reason militating against attributing to the testatrix an intent to make a nugatory gift as would exist were the whole will originally executed at the date of the codicil. In *Lee* v. *Lee,* 88 Conn. 404, 91 Atl. 269, we had before us a somewhat similar situation. The will gave certain legacies to sisters of the testatrix; they died and thereafter she made a codicil in which she gave legacies to four nieces, including two who were daughters of the deceased sisters, but in which she reaffirmed her will except as altered by the codicil; and we held that the testatrix intended the legacies to the sisters to continue "in the same legal force and effect as before the codicil was executed," that she would be presumed to know the statute under which the issue of a sister to whom a devise or legacy is given and who dies before the testator, takes the devise or bequest made to the parent; and that therefore the issue of the deceased sisters of the testatrix were entitled to the legacies. General Statutes, § 4879. By a parity of reasoning we might here presume that the testatrix knew that, upon the death of her nephew Edward C. Wheeler before her the gifts to him would lapse and that in the absence of any change in the will as respects those gifts she was content to have that result ensue.

That aside, the son, in order to establish his right to receive the gifts, must assume the burden of showing that the testatrix when the last codicil was made intended the words "my nephew Edward C. Wheeler" to have a different meaning than that which she had in mind when she originally executed the will. Presumably the will and the codicils which had been previously executed were before the testatrix when she executed the last codicil. If she then had intended to

make a bequest to the son of her deceased nephew it is reasonable to expect that she would have so described him, as she described other grandnephews in previous provisions she had made. The sole purpose of the last codicil was evidently to add a co-executor and there is no suggestion of an intent otherwise to change the provisions of the will or prior codicils. Leaving out of consideration for the moment certain extraneous evidence, there is nothing in the situation which shows an intent on the part of the testatrix to make a bequest to the son Edward C. Wheeler.

This extraneous evidence was to the following effect: The testatrix knew of the death of Edward C. Wheeler before the last codicil was executed; the son visited her at times after his father's death; both before and after that occurred she referred to him as her nephew and had stated that he was one of her favorite nephews; and on one occasion after the father's death in January, 1934, she talked to him about the fact of the bequest to his father and said that she had seen a lawyer and had fixed it so that he was to receive what his father would have received had he lived. The trial court admitted the evidence, subject to objection to be later ruled upon, apparently with the consent of all parties. In its memorandum of decision it held the evidence inadmissible upon the ground that, as the language of the will was clear and precise and the beneficiary intended existed and was accurately described, there was no ambiguity to be explained. *Jackson* v. *Alsop*, 67 Conn. 249, 252, 34 Atl. 1106; *McDermott* v. *Scully*, 91 Conn. 45, 48, 98 Atl. 350; *Day* v. *Webler*, 93 Conn. 308, 312, 105 Atl. 618. Of course at the time the last codicil was executed the testatrix's "nephew" Edward C. Wheeler did not exist and the rule stated was hardly applicable. The evidence offered did not go to the extent of attempting

to show a testamentary intent not expressed in the terms of the will. *Lee* v. *Lee,* supra, 407; *Mahoney* v. *Mahoney,* 98 Conn. 525, 537, 120 Atl. 342; *Fairfield* v. *Lawson,* 50 Conn. 501, 510; *Central Hanover Bank & Trust Co.* v. *Nesbit,* 121 Conn. 682, 687, 186 Atl. 643. The purpose was to show that the testatrix in leaving unchanged the provision for her "nephew" at the time of the republication of the will intended her grand-nephew of the same name to take the bequest. The word "nephew" has no such definite and certain meaning that the testatrix might not have been found to have intended by it her grandnephew. *Shepard* v. *Shepard,* 57 Conn. 24, 29, 17 Atl. 173. In view of the fact that at the time of the execution of the last codicil there was no one who answered the description "my nephew Edward C. Wheeler" extrinsic evidence might have availed to identify the grandnephew as the beneficiary intended. *Bond's Appeal,* 31 Conn. 183, 190; *Central Hanover Bank & Trust Co.* v. *Nesbit,* supra.

However, even if the evidence had not been finally excluded, it could not have reasonably been held to have the effect claimed. The testatrix called the son her "nephew" before as well as after his father's death and her so doing would very slightly, if at all, indicate any change of intent on her part in the meaning she intended to convey by the republication of the will with the words "my nephew Edward C. Wheeler" still retained. The significant circumstance is, however, her statement that she had seen a lawyer and had fixed it so that the son was to receive the gift the father would have received had he lived. This statement clearly implied that in her mind the words of the will in themselves were insufficient to bring about that result, and something further needed to be done. The republication of the will without any change in this

provision cannot be regarded as sufficient. The conclusion of the trial court that the son was not entitled to receive the gift was correct.

Certain of the questions as to which advice was sought arose out of the provisions of the will as to the disposition of the principals of the trust funds after the death of the life beneficiaries. In each of the trusts established in the original will it is provided that at the termination of the trust the funds constituting it are "to become a part of my residuary estate," while in one of those established in the codicil, on the termination of the trust the trustee is directed to pay or distribute the fund "under the terms of the residuary clause of my said Will," and in the other he is directed to pay and distribute it "in accordance with the residuary clause of my said will." The trial court has found that there are not in the estate sufficient funds to pay pecuniary and trust legacies, by which apparently it meant those other than the gifts made to be paid from the residue. The contention in behalf of the trustees for the Wheeler Memorial, for which provision is made in the residuary clause, is that even though the other legacies cannot be paid in full the principals of the various trust funds, at the termination of the life uses, should be paid to them, and not used to make up any deficiencies in the other gifts.

Ordinarily the residue of an estate is that portion which remains after the payment of debts, charges and particular legacies. *Phelps* v. *Robbins,* 40 Conn. 250, 264; *Stanley* v. *Stanley,* 108 Conn. 100, 109, 142 Atl. 851; *Central Hanover Bank & Trust Co.* v. *Nesbit,* 121 Conn. 682, 690, 186 Atl. 643. Even where a portion of an estate is set aside in trust for a particular use and no provision is made for its disposition at the end of that use, the fund or so much thereof as is necessary, ordinarily goes at the termination of the

trust to make up deficiencies in particular gifts in preference to a bequest made to a residuary legatee. *Porter* v. *Howe*, 173 Mass. 521, 526, 54 N. E. 255; *Matter of Title Guarantee & Trust Co.*, 195 N. Y. 339, 88 N. E. 375; *Louisville Presbyterian Theological Seminary* v. *Fidelity Trust & Safety Vault Co.*, 113 Ky. 336, 68 S. W. 427. It is true that the postponement of the application of the principal of the trust funds to deficiencies in particular gifts until the termination of life uses may result in some difficulties or inconveniencies in the settlement of the estate. In the estate before us the deficiencies very likely will not be great. Such difficulties or inconveniencies are not in any event in themselves enough to overcome the principle of law involved. *Smith* v. *Livermore* (Mass.) 10 N. E. (2d) 117, 126.

A testator may, however, vary this rule as to the application of the assets of his estate by provisions which show that, in such a case as this, the principal of the trust fund will not, at the termination of a life use, be used to make up any deficiences in particular gifts but will go to the legatees named in the residuary clause. *Matter of Reynolds*, 242 N. Y. 389, 152 N. E. 124; *In re Wiggins*, 179 N. C. 326, 102 S. E. 499. The question then is, does the will before us show that the testatrix had such an intent. Much of the very able argument in behalf of the trustees of the Memorial seems to us to be based upon a somewhat false premise. Their counsel point out the obvious fact that the testatrix did not anticipate that there would not be enough in the estate to pay the particular gifts and they argue that she could not have intended that the trust fund should be used at some indefinite time in the future to make up deficiencies in gifts which she meant to become effective at once, or that the establishment of the Memorial, in view of the careful provision she

made for it, should be subordinated to payment of the particular legacies given. The rule of law which would prefer the particular gifts to provisions for the disposition of the residue applies in the absence of a contrary intent appearing in the will. The result which actually comes about may be different from that which the testatrix would have provided for had she realized the amount of the estate she would leave, but that cannot supply the intent which must be evinced in the will to change the accepted rule. "It is of no use to speculate upon what she would have intended had she contemplated the deficiency which confronts the court. She had no intention about it. She did not consider the contingency. We must construe what she said, and we must construe it in the light of the recognized rules of construction, and not by speculation as to what she would have intended had she foreseen the present situation." *Louisville Presbyterian Theological Seminary* v. *Fidelity Trust & Safety Vault Co.,* supra, 351; 2 Page, Wills (2d Ed.) § 1311.

The trustees for the Memorial rely largely upon two New York cases. In *United States Trust Co.* v. *Black,* 146 N. Y. 1, 40 N. E. 403, the Court of Appeals had before it a will in which the testatrix, after making a number of testamentary provisions, directed that the residue of the estate be sold and made bequests to be paid from the proceeds, and provided that after these were paid further bequests were to be paid out of the residue of the sale of the residuary estate and finally gave all the rest of her residuary estate to three named persons; the question was as to which class of the residuary legatees should receive the portion of the residue represented by the fund; the controversy was not between those to whom particular legacies were given, all of which were paid in full, and the residuary legatees, but as to which of the various groups of the

residuary legatees should receive the balance left from the sale of the property. In *Matter of Reynolds,* 242 N. Y. 389, 152 N. E. 459, the will before the court created a trust for the life of the beneficiary and provided that at her death the fund should be delivered "to the institutions . . . named in Clause Twelfth of this my . . . will," Clause Twelfth being the residuary clause. The court held that the fund should be paid to the residuary legatees named in that clause, distinguishing *Matter of Title Guarantee & Trust Co.,* supra, in this way: "The gift of the remainder in that case was to the residuary estate. The gift of the principal of the Schulze trust in this case is not to the residuary estate, but to certain specified legatees." On the other hand, the cases hereinbefore cited of *Matter of Title Guarantee & Trust Co., Smith* v. *Livermore,* and *Louisville Presbyterian Theological Seminary* v. *Fidelity Trust & Safety Vault Co.,* presenting situations quite similar to the one before us, each held that upon the expiration of the trust involved, the fund became a part of the residue and was to be first applied to make up any deficiency in the particular legacies.

The trustees for the Memorial seek to distinguish the provisions for the trusts in the original will from those in the fourth codicil, claiming that, in the case of the latter at least, they are entitled to receive the entire amount of the fund at the termination of the trust. It is unlikely that the testatrix had a different intention as to the ultimate disposition of the funds established in the codicils from that she had as to the funds under the trusts established in the will. That aside, the language of the provisions in the codicils does not sufficiently indicate an intention that the funds should be paid to the legates named in the residuary clause as distinct gifts made to them rather

than become a part of the residue as such. In *Smith v. Livermore*, supra, the provision of the will in question exactly accorded with that of the second trust established in the codicil. Our conclusion is that in the case of all the trusts the funds fall into the residue at the death of the life beneficiaries, and that the trustees of the Memorial are only entitled to receive them as they or a part of them form a part of that residue.

The remaining questions presented by the appeal concern payments of interest or income to the various legatees. Under the finding it appears that a deficiency of assets will prevent the full payment of the legacies, at least until the termination of the trusts or some of them, but there would seem to be no doubt that ultimately there will be sufficient assets to pay all the particular gifts in full. The testatrix has unmistakably expressed her intent that in the case of the legacies with reference to which she directed that interest should be paid at the rate of 5 per cent. during the settlement or until the settlement of her estate, the beneficiaries should receive the interest provided from her death. That, by reason of the present deficiency of estate, those legacies cannot all be paid until some one or more of the remainder interests under the trusts become available is no reason why the legatees should not receive the interest at the rate specified upon the full amount of the legacies. *State Bank of Chicago* v. *Gross*, 344 Ill. 512, 176 N. E. 739. The proper method of applying partial payments upon a legacy is first to discharge any interest that is due and then use the balance of the available money to reduce the principal sum. *In re Erving's Estate*, 92 N. Y. Sup. 1109. An unpaid balance of a legacy continues to draw interest until it is fully discharged. *Matter of Rutherfurd*, 196 N. Y. 311, 89 N. E. 820, affirming

same case 117 N. Y. Sup. 791, where the facts are more fully stated; *In re White's Will,* 221 N. Y. Sup. 532; *Hubbell's Estate,* 216 Cal. 574, 15 Pac. (2d) 503. These principles lead to the conclusion that, when the estate presently available is applied to the discharge of the legacies upon which the will directs that interest be paid, interest upon the full amount of the legacies stated in the will should first be paid and any balance in the hands of the executor then be used to reduce the principal sum of the legacies; and that when the balances due upon the legacies are paid, interest upon those balances should be added at the rate specified in the will. See *Smith* v. *Livermore,* supra, 129.

With respect to the trusts established in the original will, upon which the testatrix directed that interest be paid, she could not have intended that the beneficiaries should receive during the settlement of the estate both that interest and the income of the funds, but the specific provision for interest at 5 per cent. takes the place of the income actually earned. On the other hand, the definite provision for the payment of interest shows that she was thinking of its payment as of the same nature as that directed to be paid upon the outright legacies. What has been said above as to the method of paying that interest would apply as regards the trusts established in the original will.

The provisions for the two trusts established in the fourth codicil created life uses in the beneficiaries named. The usual rule is that where a fund is given in trust, the income to be paid to the beneficiary, he is entitled to income earned by it from the testator's death during the settlement of the estate, and if the fund has not been separated from the corpus of the estate the average rate of income earned by the personal estate as a whole will be treated as the rate earned on the trust fund. *Bridgeport Trust Co.* v.

*Fowler,* 102 Conn. 318, 330, 128 Atl. 719; *Hewitt* v. *Hicock,* 96 Conn. 176, 179, 113 Atl. 172; *Bankers Trust Co.* v. *Greims,* 110 Conn. 36, 48, 147 Atl. 290; *Chase National Bank* v. *Schleussner,* 117 Conn. 370, 377, 167 Atl. 808. The very statement of the rule is a sufficient answer to any claim that the amount of interest paid under the directions in the will for such payments before discussed enters in any way into the computation of the income to be paid to beneficiaries of these two trusts. Had the trust fund been separated, the actual income earned by it would have been paid to the beneficiaries; the adoption of the uniform rate of income from the estate as a whole is merely a means of measuring the amount of income, in lieu of the actual income of the trust fund which because of the mingling of all of the funds of the estate together cannot be ascertained.

The reason for the payment of income from the death of the testator in the case of trusts such as these is that this gives effect to the testamentary intent disclosed in such a gift; as regards the beneficiaries the legacy is really one of the income of a definite fund. *Webb* v. *Lines,* 77 Conn. 51, 54, 58 Atl. 227. This income is not, however, paid to the beneficiaries as it accrues but at the settlement of the estate is turned over to the trustee as a special fund to be by him distributed to the beneficiaries. *Chase National Bank* v. *Schleussner,* supra, 377. The beneficiary is not, as in the case of interest upon a legacy, "seeking an accretion to that which was given him: he is seeking the very thing given." *Webb* v. *Lines,* supra, 55. There is no reason why the special fund representing the accumulated income should not abate in the same proportion as would the other legacies, including the principals of the trust funds. This in effect means that the beneficiaries of these trusts are entitled at

present to income based upon the actual amounts distributed to the trusts. See *Smith* v. *Livermore,* supra. To carry out the will of the testatrix it is necessary, however, that the amount by which this special fund is abated should be paid when assets of the estate become available. The same reasons which dictate that as regards those legacies upon which the testatrix directed that interest be paid such interest should be added, when such funds do become available, to any balance left after the distribution of the assets of the estate now in the hands of the executors, requires that the beneficiaries of these trusts should receive the income from any unpaid portion of the funds when the deficiency is finally made up. For the period before the distribution of funds now held by the executors, that income would be calculated upon the basis of the average rate of income of the estate. For any further period during which the deficiency continues, as there will be no fund in the hands of the trustee of a continuing trust from the income of which these payments can be made, from the necessity of the case the average rate of income which has been actually earned by the fund, the trust as to which has been terminated, must be taken as the rate of income which has accrued to the beneficiary of the trust which has terminated. Any unpaid balance of income which has accrued to the beneficiary of the trust which has terminated would belong to his estate. *Gorham* v. *Gorham,* 99 Conn. 187, 193, 121 Atl. 349; *Lawrence* v. *Security Co.,* 56 Conn. 423, 440, 15 Atl. 406.

The questions propounded in the complaint were unnecessarily involved and complicated, making difficult the rendition of a judgment which would satisfactorily meet the needs of the plaintiffs for advice. In its judgment the trial court construed them rather literally. In a suit by executors or trustees for advice

a considerable latitude may properly be allowed in giving scope to the questions propounded where to do so places no unfair burden upon the parties and they have not been in any way misled as to the issues to be presented to the court. We have discussed the questions argued before us upon that basis, and because a statement sufficient for the guidance of the executors and trustees seemed to require it have pursued our inquiry somewhat beyond the matters presented upon the face of the pleadings. The result to which we have come is that the judgment in general is correct as far as the trial court passed upon the issues presented but that the answers to the questions propounded require some modification and amplification.

Rather than attempt to direct specific modifications of the answers in the judgment we sum up our conclusions by rephrasing those answers in so far as any change is necessary and, in so doing, for the sake of clarity, we combine certain of the questions. The answer to questions b and c should be: When the estate presently available is applied to the discharge of the legacies given outright or in trust upon which the will directs that interest be paid, interest upon the full amount of the legacies stated in the will should first be paid and any balance in the hands of the executor should then be used to reduce the principal sum of the legacies. The answer to questions d and j should be: Leonard B. Wheeler, beneficiary under one of the trusts established in the will, and as such entitled to receive interest in accordance with the previous answer, is not entitled to receive any other income from the estate during its settlement. Amos L. Wheeler and Sarah A. Wheeler, beneficiaries under the trusts established in the fourth codicil, are each entitled to receive income from the death of the testatrix upon the amount of the respective trust funds at the average

rate of income earned by the personal estate as a whole, disregarding the amounts of interest payable under the directions in the will upon certain legacies, but this income to be subject to present abatement in the same proportion as the other legacies, including the principals of the trust funds. The answer to questions e, f, g and h should be: In the case of all the trusts both those created in the will and in the fourth codicil the funds at the death of the life beneficiaries fall into the residue and the residuary legatees are entitled to receive them only as they or some part of them form a part of that residue. Question k should be answered as follows: When the balances due upon the legacies upon which the will provides for the payment of interest are paid, interest should be added at the rate specified in the will; when the balances due upon the trusts created in the fourth codicil are paid, the beneficiaries are entitled to receive the amount by which payments of income due them has been abated because of the present deficiency of assets, and income upon the unpaid balance of the bequest should also then be paid, that income to be calculated for the period before the distribution of the funds now available upon the basis of the average rate of income of the personal property of the estate as a whole, and for any further period during which the deficiency continues upon the average rate of income earned by the fund the determination of the trust as to which has made possible the payment of the deficiencies.

There is error in part, the judgment is set aside and the trial court directed to enter judgment in accordance with this opinion.

No costs will be taxed to any party.

In this opinion the other judges concurred.