Grant's Estate.

Argued November 9, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Ralph B. Umsted,* with him *John R. Umsted* and *Max M. Yaffe,* for appellant.

*Paul D. Edelman,* for appellees.

OPINION BY STADTFELD, J., December 22, 1942:

This is an appeal from a final decree of distribution by the Orphans' Court of Berks County submitted on an agreed statement of facts.

Jeremiah K. Grant died in 1913, leaving under his will his estate to his wife for life with power to consume principal. Under this provision and by virtue of a subsequent provision of the will he authorized the sale of real estate. His wife, being unable to enter security, transferred proceeds of real estate, in cash and in kind of $33,500 to the Pennsylvania Trust Company. (Later Berks County Trust Company was substituted.) At the death of the wife there remained for distribution but $5,452.48 to pay pecuniary bequests totaling $14,200. Thereupon the court awarded to the Berks County Trust Company, Trustee for Mary I. Savacool under the terms of the trust declared in the will for $8,000, 36% or $2,880, and, inter alia, to Alice G. Hibshman, 36% of a $2,000 bequest or the sum of $720.

The wife of the decedent died November 28, 1939, and Mary I. Savacool died July 25, 1941.

The $2,880 in the Savacool trust, reduced by proper

allowances to $2,263.60, was awarded by the court in an opinion by MARX, P. J., to the ultimate remaindermen— the children and heirs of Mary Weidner, deceased, a sister of testator, and to the children and heirs of Hanna Dietrich, deceased, another sister.

The claim of Alice G. Hibshman for the difference between the 36% which was awarded to her and the amount of the bequest, amounting to $1,280, with interest was disallowed in toto. And exceptions to that adjudication having been dismissed, this appeal was taken.

Under said will the testator provided, inter alia, as follows: "I give and bequeath unto Mary I. Savacool who resided and lived with us, myself and wife for many years and has been kind to me, the interest to be paid to her semi-annually of the sum of Eight Thousand Dollars ($8,000) to be invested out of my estate under the direction of the Orphans' Court of Berks County at the rate of interest which can be realized for other loans, and at her death the principal of Eight Thousand Dollars ($8000) shall revert and be distributed to the persons entitled to take any residuary estate as hereinafter directed."

Then follows a gift of $800, in trust for Polletta G. Grant, for life, with the further provision that if she marry and have children, the principal of the trust shall be paid to her. The testator then further provided: "If she shall die without children, the principal of Eight Hundred Dollars, shall revert to my residuary estate and shall be divided among those entitled to take my residuary estate as hereinafter directed."

Pecuniary bequests and specific devises then follow and the testator then finally disposes as follows: "The rest residue and remainder after the death of Dear Wife I direct to be divided into two shares, one share or half shall go to and I give and bequeath unto the children of my sister Hannah deceased to be divided in equal shares among them.

"The other share or half part thereof I give and bequeath unto the children of my sister Mary deceased to be divided in equal shares among them."

We quote from the opinion of the court below: "The specific question raised under the testamentary disposition involved, upon this record, is whether the principal of the trust goes to the other legatees under the will who, as aforesaid, have received only 36 per cent of their respective legacies, or goes to the children of the testator's sisters, Hannah and Mary. The intent of the testator must be found in the terms used in his will. The testator was a practicing attorney, a member of the bar of this county, in active practice at the time of his death and through a long period of years theretofore. Evidently, the will was drawn by himself. We must, accordingly, note that he was familiar with technical terms incident to the granting of estates, as well as the adjudicated and the popular meanings of such terms."

The intent as disclosed therein has always been held controlling in construing a will; courts will seek to find that intent within its four corners. Once determined, it will be effectuated unless in contravention of some established rule of law or public policy: *Mereto's Estate,* 311 Pa. 374, 166 A. 893.

If the language employed in disposing of an estate is plain and clearly discloses testator's intention, the will interprets itself, and hence no rules of construction are necessary to aid in its interpretation: *Wood v. Schoen,* 216 Pa. 425, 66 A. 79.

And as well said by SHARSWOOD, J., in *Reck's Appeal,* 78 Pa. 432: "All mere technical rules of construction must give way to the plainly expressed intention of a testator, if that intention is lawful. It is a rule of common sense as well as law not to attempt to construe that which needs no construction."

The principal question, in construing the language

of this trust, is whether the fund, after the death of the life tenant, is intended merely to fall into and *become a part of the residuary estate,* or whether it was the testator's intention to *bequeath them directly to the persons named in the residuary clause.* In the one case the fund becomes an integral part of the residue and consequently will be used to supply deficiencies in prior legacies before distribution among the residuary legatees; whereas, in the other case, the residuary clause is referred to only for the purpose of identifying the persons who are to take the fund as therein bequeathed, but goes immediately to the persons thus identified, and not being a part of the residue, are not subject to the payment of deficiencies in prior legacies.

It is the contention of those who comprise the class of persons to share in said residuary estate that the intent of the testator is clear that the principal of this trust after the death of Mary I. Savacool passes to those persons entitled to take the residuary estate. Secondly, it is contended that the language of the will gives those persons a prior right to this fund over the general legacies.

In *Lincoln's Estate,* 121 Pa. Superior Ct. 145, 182 A. 657, the will of the testator provided first that the remainder of a trust for life should "revert to my residuary estate ......," and a second provision directed that certain legacies be paid in full before certain other legacies. The court properly awarded the fund for distribution to the legatees of the preferred group on account of the balance due them.

In the case of *Matter of Reynolds,* 242 N. Y. 389, 152 N. E. 124, the clause of the will creating the trust directed the trustees, upon the death of the life beneficiary, to deliver the principal of the trust "to the institutions hereinafter named in clause twelfth." The court held that the gift of the principal was not to the residuary estate but to the legatees (charitable insti-

tutions) named in the residuary clause, and that, therefore, it was not subject to abatement in favor of the unpaid legacies.

In *First National Bank and Trust Company v. Baker,* 124 Conn. 577, the court had before it a will containing a trust which provided that at the termination the funds are "to become a part of my residuary estate." The court said: "Even where a portion of an estate is set aside in trust for a particular use and *no provision* is made for its disposition at the end of the use, the fund, or so much thereof as is necessary, ordinarily goes at the termination of the trust to make up deficiencies in particular gifts in preference to a bequest made to a residuary legatee.

"A testator may, however, vary this rule as to the application of the assets of his estate by provisions which show that, in such a case as this, the principal of the trust fund will not, at the termination of a life use, be used to make up any deficiencies in particular gifts, but will go to the legatees named in the residuary clause."

In the instant case the will shows an intent to pass the principal in the trust to the persons named in the residuary clause. It reads "to the persons entitled." It does not read as in the Lincoln case, "revert to my residuary estate." It passes the fund out of the will and out of the estate. It does not fall into the residue. The word to "persons" is a gift to particular legatees.

As stated by the court below in its adjudication, the testator, a lawyer, "manifestly used the word 'revert' in the sense of 'go to' and by directing that the estate in remainder go to and be distributed to *designated persons,* gave a direct and distinct gift in remainder to those whom he chose to designate as remaindermen under the later terms of his will;" and further, "The testator (in the writing of his will) discriminated and adopted fit words and expressions to carry out his manifested intent."

110

We believe that the court below arrived at a correct conclusion.

The decree of the court below is affirmed at appellant's costs.