## Kneedler Estate.

Argued January 8, 1953. Before STERN, C. J., STEARNE, BELL, CHIDSEY and ARNOLD, JJ.

*Richard K. Wagner,* with him *Samuel H. High, Jr.,* and *J. Harry Wagner, Jr.,* for appellants.

*S. Lloyd Moore,* for appellee.

*Frank J. Eustace, Jr.,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, March 23, 1953:

This is an appeal from a decree of the Orphans' Court of Montgomery County which dismissed excep-

tions to an adjudication sur the second and final account of Land Title Bank and Trust Company and the schedule of distribution in accordance therewith.

The decedent, Jacob E. Kneedler, Jr., died on February 12, 1932, leaving a will and codicil thereto. The pecuniary legacies and trusts established by the will totaled $49,550. The first and final account of the executors and the adjudication thereon showed a balance of principal of $46,065.22, which was composed mainly of unconverted securities. Since there was a deficiency of assets, it was stated in the adjudication that the pecuniary legacies must abate proportionately.

The will established a trust of $30,000, the income from which was to be paid to the decedent's son, Eugene S. Kneedler, for life, and upon his death the principal was to revert to the residuary estate. Certain real estate was also placed in trust for Eugene S. Kneedler for life, and upon his death it was to be sold and the proceeds added to the residuary estate. A trust of $15,000 was established for the decedent's grandson, Robert K. Todd, one of the appellants. The terms of this trust were that the income was to be paid to Robert K. Todd until he reached the age of 30 years, at which time the trust was to terminate and the principal was to be paid over to him. A trust of $500 was also established for the decedent's great-grandson, Eugene G. Kist, the principal of which was to be paid over to him when he reached the age of 21 years.

On June 3, 1935, all of the parties in interest entered into an agreement. At that time the balance of principal for distribution, after adjustment for income and expenses and disposition of specific bequests, was $46,581.02. The agreement set forth the inventory value of the estate, and recited that the balance of principal of the personal estate was insufficient to pay all the legacies and set up the trusts in accordance

with the will of the testator, and that the parties in interest had agreed to the schedule of distribution attached thereto. With respect to the three trusts the agreement provided: "That the several Trusts directed to be created by the Will of decedent, namely the trust for Eugene S. Kneedler, son, Robert K. Todd, grandson, and Eugene George Kist, the great-grandson, shall be taken, from the Personal Property Principal at the aforesaid values, for the time being, and so remain to and until the values thereof shall, in the discretion of the Trustees, or their successors in Trust, justify and warrant a sale or disposition thereof, and a reinvestment as is authorized by the powers granted to the said Trustees by the Will of the decedent; . . .". The agreement then continued and provided for the postponement of payment of certain legacies until the termination of the trusts for Eugene S. Kneedler, part payment of other bequests, and payment of income to the cesti qui trustents in proportion to their interests therein. The schedule of distribution attached to the agreement appeared as follows:

"To Mt. Vernon Cemetery Co. In Trust for perpetual care of Cemetery lot; Item second of Will ..... 150.00

To Charles B. Harding and the Integrity Trust Co. of Philadelphia In Trust for son, Eugene S. Kneedler; Item sixth of Will ..... 30,000.00

To Charles B. Harding and the Integrity Trust Co. of Philadelphia In Trust for grandson, Robert K. Todd; Item eighth of Will ..... 15,000.00

To Josephine Kist, Item ninth of Will, $1,000.00 on a/c ..... 165.51

To Charles B. Harding and the Integrity Trust Co. of Philadelphia In Trust for

great-grandson, Eugene George Kist; Item tenth of Will     500.00

To Northern Home for Friendless Children, Item twelfth of Will, $500. By Agreement attached hereto, legatee consents to postpone payment until termination of the Life Estate to son Eugene S. Kneedler and the distribution of the remainder of the Estate

To the Salvation Army, Item thirteenth of Will $500.00. By agreement attached hereto legatee consents to postpone payment until termination of the Life Estate of son Eugene S. Kneedler and the distribution of the remainder of the Estate

To Kensington Hospital for Women, 136 Diamond St., Philadelphia, Item fourteenth of Will     300.00

To the Home of the Merciful Saviour for Crippled Children, Item fifteenth of Will $300.00. By agreement attached hereto, legatee consents to postpone payment until termination of the Life Estate of son Eugene S. Kneedler and distribution of the remainder of the Estate.

To Philadelphia Home for Incurables, Item sixteenth of Will     300.00

To Miriam Roberts, Executrix of the Estate of Ella Ogram (now deceased) legacy by codicil to Will, directed to be paid to Executrix of decedent $1000.00 on a/c     165.51

    46,581.02"

Under this schedule of distribution the entire amount of principal then available was distributed. This dis-

tribution was approved by the court and filed of record on April 7, 1937.

On October 14, 1939 appellant Todd assigned a one-half interest in his legacy to Emil Levitt, who is the other appellant.

On January 28, 1941, the surviving trustee filed an account which showed the balance of principal of the three trusts to be $44,312.87. At this time appellant had attained the age of 30 years and claimed to be entitled, subject to his assignment, to distribution of 150/455ths (the proportion $15,000 bears to $45,500) of the principal of the combined trusts. Such distribution was ordered in the adjudication of the account filed January 28, 1941. The adjudication also ordered that the assets be reappraised as of the date of the adjudication (April 2, 1941), and appointed Land Title Bank and Trust Company as substituted trustee.

There was considerable depreciation of the unconverted securities and after reappraisal there was available for distribution $17,259.83. 150/455ths of this total after the reappraisal, amounting to $5,690.04, was awarded in cash and an undivided interest in the securities, to appellant Todd and his assignee. The balance of $11,569.79 in cash and unconverted securities was awarded to the substituted trustee since the trusts for Eugene S. Kneedler and Eugene G. Kist still continued. No exceptions were filed to this schedule of distribution.

On January 30, 1948 Eugene G. Kist, having arrived at the age of 21, was awarded 5/455ths of the principal of the combined trust, or $204.77.

Eugene S. Kneedler died on June 13, 1950, and the unexpended portion of the $30,000 trust for him (which was $12,376.03) as well as the proceeds of the real estate in which he had a life estate (amounting to $9,-

014.91) became part of the decedent's residuary estate under the terms of the will.

At the audit of the second and final account of the substituted trustee, appellants claimed that they were then entitled to receive out of the residuary estate the sum of $9,309.96, which is the difference between $15,-000 and the $5,690.04 awarded them in the distribution pursuant to the adjudication of April 2, 1941.

The court below held that the award of $5,690.04 to the appellants satisfied in full any claim against the estate and confirmed the second and final account of the trustee. The schedule of distribution provided for payment of the pecuniary legacies which were postponed or paid in part under the terms of the agreement of June 3, 1935, and divided the residue equally among the five charities designated as residuary beneficiaries in the will.

Exceptions to this adjudication were dismissed by a decree filed on November 21, 1951. Appeal is taken from this decree.

The result reached in this case is dependent upon the construction and effect of the agreement of June 3, 1935. Appellants contend that this was an abatement agreement providing for a temporary distribution to all of the legatees. Appellees contend that it was not an abatement agreement but a plan of distribution agreed upon to avoid an abatement, and to provide for a single combined trust rather than three separate trusts.

If there had been an abatement of appellants' legacy, then when a fund became available upon the termination of the trusts for Eugene S. Kneedler, in the absence of a contrary intention on the part of the testator, that fund should be used to make up deficiencies in abated legacies before becoming part of residue. Cf. *Lincoln's Estate*, 121 Pa. Superior Ct. 145, 182 A. 657;

*Grant's Estate,* 151 Pa. Superior Ct. 104, 29 A. 2d 431; Hunter, Pennsylvania Orphans' Court Commonplace Book, p. 746. If the purpose of the agreement was not to abate the trust legacies, but to separate the trust estates from the personal estate of the decedent and to combine the trusts at their inventory value into a single trust and to give each of the beneficiaries proportionate rights to income, then this was a distribution agreement and resort cannot be had to the residuary estate to make up for shrinkage in trust assets.

In order to determine the effect of the agreement of June 3, 1935, it is necessary to examine the provisions of the agreement itself. In the agreement it is stated: "WHEREAS, a *Scheme of Distribution* has been agreed upon by all the parties in interest in the said Estate, as is set out and particularized in the *Schedule of Distribution* hereto attached: . . .". (Emphasis supplied). In the attached schedule of distribution appellants' trust legacy was awarded to the trustees at its full value. The words of the agreement in reference to the trusts are: ". . . the several Trusts . . . shall be taken, from the Personal Property Principal at the aforesaid values, for the time being, and so remain to and until the values thereof shall, in the discretion of the Trustees . . . justify and warrant a sale or disposition thereof, and a reinvestment . . .". There is nothing in the agreement to indicate that the value of the unconverted securities was less than the appraised value in the inventory, which is the value referred to by "at the aforesaid values" in the agreement. The words "for the time being" as used in the agreement cannot be construed to mean that this was merely a temporary or partial distribution, but refer to the right of the trustees to retain the unconverted securities "for the time being". The rest of the provision makes it clear that it looked

toward the sale of the securities by the trustees at a later time as the trustees in their discretion should determine.

If it had been intended that payment of the $15,000 trust legacy be postponed until after the termination of Eugene S. Kneedler's life estate, then it would have been so expressed in the agreement, as was done concerning other legacies as follows: ". . . the payment of the legacies of $500.00 to the Northern Home for Friendless Children, Item twelfth of Will; of $500.00 to the Salvation Army, Item thirteenth of Will; and of $300.00 to the Home of the Merciful Savior, Item fifteenth of Will; and also the bequest of $3,000.00 to Josephine Kist, granddaughter, by codicil to Will, shall be postponed to and until the termination of the Trust for Eugene S. Kneedler, the son, at which time the said respective sums shall be paid to the said legatees before any distribution of the rest, residue and remainder of the Estate of the Decedent; . . .".

If it had been intended to make distribution of only a part on account of the $15,000 trust legacy, then it would have been so expressed in the agreement, as was done in the provision concerning the legacies of $1,000 each to Josephine Kist and Ella Ogram: ". . . the bequest of Josephine Kist of $1,000.00, Item ninth of Will, and to Miriam Roberts, executrix of the Estate of Ella Ogram, (now deceased) of $1,000.00, shall currently be paid the sums of $165.51 each as directed by the said Schedule of Distribution, and from time to time such equal additional sums as shall come into the hands of the Accountants from the sales of securities or other sources of Personal Principal Items, and from the sale of such parts or portions of the real estate of the decedent, as may be available from time to time to and until the full sum of $1,000.00 to each shall have been paid; . . .".

In the schedule of distribution attached to the agreement the postponed legacies received no award, and Josephine Kist and Ella Ogram received $165.51, designated as being on account of legacies of $1,000. There was no such qualification or omission in the award made to the trustees for Robert K. Todd. Viewing the entire agreement and the attached schedule of distribution together, we must conclude that the award of $15,000 was in full satisfaction of any claim Robert K. Todd or his assignee might have against the estate of Jacob E. Kneedler.

Appellants further contend that the assets of the estate had depreciated prior to the time of the agreement of June 3, 1935. There is no proof in the record to support this contention. The trust legacies were set up at their face values, and composed of assets as they were then appraised, and to which there was no objection. To allow a review of those appraised values at this time would be the equivalent of reviewing the adjudication sur the executors' account and schedule of distribution in accordance therewith. Under Section 48 of the Fiduciaries Act of 1917, P. L. 447, 20 PS §843, [then in effect], in the absence of fraud, the orphans' court has no power to review an executor's account where such application is made more than five years after the entry of the decree of final confirmation: *Hamilton Estate,* 351 Pa. 419, 41 A. 2d 567.

Under the terms of the agreement, certain of the pecuniary legatees were paid in full. Others were satisfied to accept partial payments on account of their legacies, and to await the termination of the $30,000 trust to receive the balance. Todd's trust legacy was set out at its full value. Assuming that the value of the trust assets in 1935 was less than the inventory value, as is contended by appellants, then the sole pur-

pose of the agreement, so far as the trust legatees were concerned, was to take advantage of the possibility of improving the financial situation of those trust legatees by the enhancement of the value of the trust assets during the period of the continuation of the trust for Eugene S. Kneedler, and to avoid an abatement. It was clearly not within the contemplation of any of the parties to the agreement that any one of them should benefit to the detriment of other parties in the event of a shrinkage in the value of the trust assets.

On this record we must conclude that the reduced value of the trust funds was due to depreciation in the assets of the trusts, and did not constitute an abatement of the trust legacies. Appellants therefore have no rights in the residuary estate established upon the termination of the trusts for Eugene S. Kneedler.

Decree affirmed. Costs to be paid out of Estate.